# CHARLESTON.

THE CARLSBAD MANUFACTURING CO. V. J. M. KELLEY.

Submitted May 7, 1919. Decided May 13, 1919.

1. FRAUDULENT CONVEYANCES—*Relationship of Parties—Burden of Proof.*

Generally the burden of proof rests on him who charges fraud, and not on him whose conduct is charged to be fraudulent. But where the transaction alleged to be fraudulent is between persons whose relationship by blood or marriage is so intimate as fairly to create the presumption of their susceptibility to influences prompting favoritism by the one towards the other, the burden of establishing freedom from fraud as against creditors shifts to him who is charged therewith. (p. 193).

2. SAME—*Husband and Wife—Title in Name of Wife—Presumptions.*

Where property is alleged to have been purchased by a wife during coverture, the burden is upon her to prove distinctly that she paid therefor with means not derived from her husband; and in the absence of clear proof to that effect, the presumption is that it was acquired with his means, and it is liable for his debts. But if she furnish evidence clearly showing that it was not acquired with her husband's means, it will not be liable for his debts. (p. 194).

3. EQUITY—*Contracts Between Husband and Wife—Employment of Husband.*

The marital relation does not prevent the employment of the husband by the wife, upon a reasonable monthly salary, to assist in the management of a store which is her own separate property. But equity does not permit such an agreement or arrangement between them, when fraudulent, to operate to the prejudice of the creditors of either or both of them. (p. 195).

4. SAME—*Jurisdiction.*

Generally where a court of equity has once obtained jurisdiction of a cause, it will retain it for all purposes and administer complete relief. But in order to authorize relief obtainable in an action at law, some substantial ground must exist to confer equitable jurisdiction, and if the pleadings or proof fail to establish a basis for such relief, a court of equity is without jurisdiction to award other relief by way of recovery upon a purely legal demand, unless it appears that the remedy at law is inadequate. (p. 197).

Appeal from Circuit Court, Randolph County.

84 W. Va.

Bill by the Carlsbad Manufacturing Company and others against J. M. Kelley and others.   Decree for defendants, and plaintiffs appeal.

*Affirmed.*

*James A. Bent* and *E. A. Bowers,* for appellants.
*Samuel T. Spears,* for appellees.

LYNCH, JUDGE:

The object sought by plaintiffs' original and amended bills and the petitions filed during the pendency of the cause was to set aside and annul as fraudulent certain transfers by the defendant Clarence Kelley of a stock of merchandise owned by him in 1908 and by him sold in bulk to John R. Crickard November 14 of the same year, and by Crickard to W. L. Snyder about nine months thereafter, and by Snyder to J. M. Kelley, the wife of Clarence, December 4, 1909, and a deed by Anna Swecker and E. E. Simmons conveying to J. M. Kelley a lot located at Valley Head, Randolph County, and one or two other lots or parcels of land sold but not conveyed to her by Mary and Harman Conrad at the same place; and to subject to sale the merchandise and lots and apply the proceeds to the satisfaction of the debts of Clarence Kelley.   The right to this relief the decree complained of upon this appeal by plaintiffs denied, and dismissed the bills and with them the petitions.

Logically the first question presented for decision is whether the sale and transfer of the stock of merchandise to Crickard was fraudulent and void as to the creditors of Clarence Kelley.   Whatever may have been his purpose and intention does not matter unless Crickard had knowledge or notice of such purpose and intention at the time of the transfer, or notice or knowledge of such facts and circumstances respecting it as would then indicate a wrongful intention on the part of Kelley towards his creditors.   Respecting this intention, as later developed and made clear beyond question as regards the object of the sale and its effect upon the creditors, and the competency of Kelley to disregard his legal and moral obligation to them, there is no room to doubt, and

hence it is unnecessary to attempt to relate in detail what he subsequently did to protect some of them, and failed to do to protect others whose claims were equally just and meritorious. This conduct on his part is not important or significant unless, as we have said, Crickard knew or wrongfully failed to ascertain the true status of the affairs of Kelley at the date of the transaction as regards the sale and transfer of the merchandise. The Bulk Sales Act of this state had not then been enacted. It was not passed and did not become effective until the year 1909. Section 3a, ch. 74, Code. Nothing concerning or chargeable to these transfers by Crickard to Snyder and Snyder to Mrs. Kelley appears in any manner warranting recourse to its provisions, except the $900 note executed by Snyder to Crickard, and it is involved only indirectly in this controversy. And unless it appears that the transfers were made otherwise than upon the payment of or agreement to pay a valuable consideration, and that the purchaser had notice of the fraudulent intent of his immediate grantor, nothing in that chapter, except the section respecting sales of merchandise in bulk in disregard of its provisions, can affect the title of such purchaser, according to section 1 of that chapter.

This is the second suit involving the same transaction, in each of which the sales and transfers to Crickard, Snyder and Mrs. Kelley were assailed as fraudulent, and to which the purchasers were parties, except that Crickard was brought in not by the original but by the amended bill filed in this suit, and in each of them he filed an elaborate and unequivocal answer specifically and seriatim denying every allegation made therein in any wise affecting the bona fides of his connection with the acquisition of the property, his intent and purpose in acquiring it, and his lack of knowledge of any faudulent design of Clarence Kelley. And in each case the court held valid and unimpeachable Crickard's purchase of the property. Although he did not testify as a witness in his own behalf or at all, notwithstanding the general replication to his answer, it was not necessary that he should do so because no witness called by any other party to the suit spoke or was asked to speak a word tending in any degree to

impeach the validity of the transfer to him or in derogation of his business or financial ability, character or integrity. The charges in any wise reflecting on him, and to sustain them no proof of any consequence was offered, are: First, an obscure and virtually meaningless allegation in the pleadings that he had seen the ups and downs of the mercantile business at Valley Head; and, second, an alleged inadequacy of price, evidenced by the payment of $4500 for merchandise said to have been worth between $8000 and $9000, but the original cost of which was not proved to have been more than $6000; and from each of which unsustained charges we are asked to assume his participation in a scheme or design to defraud creditors. But granting the sufficiency and materiality of the charge respecting his previous business failures, Crickard, while confessing the misfortune, attributable, he says, to lack of experience, subsequently, according to the specific declaration of his answer, satisfied and discharged every liability so incurred. And as to the second charge, we cannot assume as inadequate the consideration paid for goods whose original cost the proof shows not to be in excess of $6000, the difference between them being explained by him as due to an allowance for depreciation and deterioration of the stock.

Generally on him who charges fraud, and not on him whose conduct is charged to be fraudulent, rests the burden of proof. 6 Michie, Enc. Dig., 659. Well recognized exceptions to the general rule exist, it is true, in certain cases, as where the parties to a transaction charged to be fraudulent are susceptible of influence through sinister motives, as in dealings between kindred or persons standing in confidential relations to one another. But no such relationship or connection or sinister motives or invalidity due thereto appear anywhere in this case as regards Crickard. The $4500 paid for the merchandise he delivered to Kelley in money, and Kelley swears he received it and applied it to the liquidation of his debts and liabilities, reserving no part of it for his immediate personal use. What he did with the money did not in the least concern Crickard or tend to the impeachment of the transfer. No fact or circumstance proved tended to trace to the latter

any information or notice sufficient to impute to him knowledge of any fraudulent intent of Kelley before or at the time the deal was consummated. If, as we have seen and hold, Crickard acquired an unimpeachable title to the stock of merchandise, he could and did make a valid sale thereof to Snyder, and the character and good faith of this transaction is assailed only by the pleadings, the allegations of which are supported by no proof whatsoever, nor was there any attempt to prove the fact to be as alleged.

The important inquiry remaining for discussion and decision relates to the sale by Snyder to Mrs. Kelley. Between them there is some relationship, he being a half brother of her father; but to her he owed no duty other than to deal justly and fairly with her. It was she, not he or her husband or any other kindred of either, who first made the initial advancement to enter into the negotiations culminating in the purchase of the property. She and Snyder personally and alone dealt and treated with each other in regard to the sale, agreed upon the terms, amount, time and manner of payment. The consideration was $4000, of which she paid $2500 in currency, and for the residue executed to him her personal notes, one for $600, the other for $900, both otherwise being unsecured, the first of which she paid before the institution of this suit, and the second of which he assigned to Crickard in lieu of the note held by the latter as evidence of a balance due him from Snyder on the sale to him by Crickard. This note remains unpaid.

No part of the consideration for the last transfer of the property is traced to the husband of the purchaser. Clearly he had no money and no means of acquiring it; no friends willing to loan him any, and no credit to permit him to borrow or procure endorsers therefor if he could in that manner obtain it. She seems to have had the character and credit which he so grossly lacked. While his father, Albert Kelley, apparently did not deem his son worthy of confidence or assistance, or perhaps entertained a suspicion of the son's lack of ability or honesty, he did render material help and assistance to the son's wife in the transaction under investigation. To consummate it, he loaned her the amount of the cash

payment to Snyder, took her note therefor, part of which she repaid, and the balance he bestowed upon her as a gift, perhaps because he discovered her ability to manage the property successfully, as she seems to have done. No one questioned Albert Kelley's financial ability to loan his daughter-in-law that amount of money, or that he made the loan, or that she executed to him her note therefor, and these matters the evidence clearly and unequivocally establishes. He owned timber land near Valley Head and sold the timber standing thereon about the time he loaned Mrs. Kelley the money used by her in the purchase of the goods, and when he delivered that amount to her, he had in the bank to his credit more than $5000, whether derived from the sale of the timber or from some other source the evidence does not definitely show. The amount of the deposit in the bank to his credit is proved by Bing, the cashier, and his statement is not impeached and doubtless could not be and was not questioned. It is argued, but not proved, that the money so credited to the father belonged to the son, wherefore the latter and not the former thereby enabled Mrs. Kelley to acquire the property. If this were true and the proof established the fact to be as stated, the argument would avail to support the charge of fraud. But the argument rests only upon mere suspicion, not upon proof, of which some might have been furnished if it existed. The failure to produce it warrants assumption of its nonexistence.

The other persons from whom Mrs. Kelley borrowed money either to purchase the property or to meet the expense incurred in its management bear undisputed testimony to support these transactions, and credit her with repaying them in whole or in part according to her undertaking in that regard, and express no dissatisfaction with the result.

As indicative of ownership, appellants emphasize in argument the joint participation by the Kelleys in the conduct and management of the store. As regards this claim the proof is equally clear and satisfactory. Clarence Kelley's connection therewith is that of an employee upon a monthly salary which is shown not to exceed the amount paid for a like service in the same community under similar circumstances at

that time. The legal right of a wife so to employ her husband upon the payment of a reasonable compensation seems no longer a controverted legal proposition. *Trapnell* v. *Conklin,* 37 W. Va. 242; *Board of Education* v. *Mitchell,* 40 W. Va. 431. The only qualification is that such an agreement or arrangement betwcn them will not be permitted to operate to the prejudice of the creditors of either or both of them. *Boggess* v. *Richards,* 39 W. Va. 567. The mere employment, though upon a fairly compensatory monthly salary, in this case $50, does not suffice to cast suspicion upon the validity of Snyder's transfer to Mrs. Kelley. Besides, the greater part of the payment was devoted to the maintenance of the household expenses, according to undisputed proof.

This, as we have said, is the second suit involving the property of Clarence Kelley, and the final decree in the first of the two is relied on as showing a former adjudication of all matters in issue in this litigation. Whether the decree foreclosed the right to prosecute this suit we deem it unnecessary to decide in view of the conclusion clearly indicated by what has already been said upon the merits of the cause.

Counsel for the claimants also complain of the failure to decree against Clarence Kelley the debts contracted by him with McCrea Mills Company, duly verified, which with interest from the date they became due and payable aggregate $597.01. The inclusion of this debt in the decree of dismissal was not asked for in the court below. Whether the lower court erred in dismissing that claim depends upon the further question whether, after holding insufficient the proof of fraud, the charge which alone conferred authority to hear the cause and determine the rights of the parties in reference thereto, there still remains jurisdiction sufficient to warrant relief not within the contemplation of the parties when the suit was brought. Their right to relief depended upon an adjudication of the issue involving the fraudulent character of the transactions in controversy. The adjudication against them upon that question obviously terminated

the litigation and effected an exhaustion of the powers of that tribunal to take further steps in the cause. The same limitation applies to this court. As was said in *Home Gas Co.* v. *Mannington Window Glass Co.,* 63 W. Va. 266, 274, "the ultimate end of the case here, as it should have been in the circuit court, is to adjudge the plaintiff not entitled to the relief prayed for, the fraud alleged not having been proven, and to dismiss the bill." Virtually the same thing was said in *Amick* v. *Ellis,* 53 W. Va. 421, a suit to enforce specific performance of an unacknowledged contract for the sale of the separate real estate of a married woman performed in part by the plaintiff, who asked in the alternative for repayment of the money received by her. The language there used was: "We cannot apply the rule (the rule contended for here) that, having jurisdiction for one purpose, full relief or alternative relief will be given. There is jurisdiction neither to compel a deed nor for (the payment of) money." While cases may be found holding otherwise upon the same subject, the preponderance of opinion upholds the view herein expressed, and, as sometimes stated, "where a case for relief in equity fails, a court of equity is without jurisdiction to award other relief by way of disposing of the entire controversy; unless indeed it appears that the remedy at law will be inadequate. Otherwise, as the courts have frequently pointed out, a litigant, by a pretended claim for equitable relief, might deprive his opponent of advantages incident to an action at law." *Johnston, etc. Bros.* v. *Bunn,* 108 Va. 490, holds to the contrary, but the annotation to the case, found in 19 L. R. A. (N. S.) 1064, uses the language above quoted and cites numerous authorities to the same effect.

The case of *Evans* v. *Kelley,* 49 W. Va. 181, seems to announce a contrary doctrine. Point 3 of the syllabus is: "Equity having acquired jurisdiction of a cause for one purpose, although the relief sought be finally denied, any relief, legal or equitable, justified by the pleadings and tending to end litigation between the parties, will be granted." To support that conclusion the opinion cites *Walters* v.

*Bank,* 76 Va. 12; *Hotchkiss* v. *Plaster Co.,* 41 W. Va. 361; 11 Am. & Eng. Enc. Law (2d Ed.) 201. The Virginia cases adopt the minority rule, as we have seen, and are not in consonance with the countervailing weight of authority on the subject. There are but two cases cited in 11 Am. & Eng. Enc. Law, *supra,* for the doctrine therein stated, and *Hotchkiss* v. *Plaster Co., supra,* reiterates only the well established rule, inapplicable here, that when equity has jurisdiction for one purpose, the court will determine all matters involved in the litigation, unless some good reason for not doing so is made to appear. That case, therefore, is not an authority for the proposition stated in *Evans* v. *Kelley supra.* Besides, our later decisions, cited, adhere to the principle heretofore announced and virtually, though not expressly, overrule that case. While not directly in point, the recent decision of this court in *Deming National Bank,* v. *Baker,* 83 W. Va. 429, 98 S. E. 438, affords another illustration of this rule, and accords with the generally expressed opinion of the legal authorities dealing with the subject. 10 R. C. L. p. 372; 16 Cyc. 111.

What has been said renders unnecessary the expression of an opinion upon other questions discussed by counsel. Perceiving no error, we affirm the decree.

*Affirmed.*