# Richmond.

## H. LIPMAN v. NORMAN PACKING COMPANY, INC., ET AL.

February 25, 1926.

Absent, Christian, J.

1. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Fraudulent Intent of the Debtor.*—In the instant case, a suit to set aside as fraudulent a conveyance of real property by a debtor to his brother, a witness testified, and his testimony was uncontradicted, that he threatened the debtor that if he did not pay the debt he would attach his real property. To which the debtor replied that he could not do it because he had "transferred that property to keep you from doing it." There was evidence of another threat on the part of the debtor not to pay the debt in question.

   *Held:* That the debtor transferred the property with a purpose of defeating complainant in its effort to collect the account admittedly due.

2. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Proof of Fraud—Presumption.*—Fraud is not to be assumed on doubtful evidence, or circumstances of mere suspicion. It must be clearly and distinctly proved. The law never presumes fraud, but the presumption is always in favor of innocence and honesty.

3. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Fraudulent Intent Concurred in by Both Grantor and Grantee.*—A fraudulent intent concurred in by both grantor and grantee always vitiates a conveyance, as indeed the statute declares affirmatively by pronouncing its nullity, and negatively by providing that it shall not be void if founded on a valuable consideration, and the grantee had no notice of the fraudulent intent.

4. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Badges of Fraud—Relationship.*—Relationship is not a badge of fraud, and there is no law which forbids persons standing in near relationship of consanguinity, affinity, or business, from dealing with each other, or which requires them to conduct their business with each other differently from the manner in which they deal with other persons, though when fraud is charged their dealings with each other will be closely scrutinized, as they may strengthen a presumption arising from other circumstances. But the relationship of the parties does not relieve the creditor from proving the charges of fraud set up in the pleadings.

5. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Relationship—Burden of Proof.*—As a general rule the burden of proof rests on him who charges fraud, and not on him whose conduct is charged to be fraudulent. But, where the transaction assailed is between brother and brother or other near relatives, only slight evidence is required to shift the burden of showing its *bona fides.*

6. FRAUD AND DECEIT—*Proof of Fraud.*—While fraud must be clearly proved by him who alleges it, it is not necessary that it should be expressly shown. It is rare that it can be.

7. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Proof of Fraud—Transaction Itself Furnishing Proof of Fraud.*—A transaction may of itself and by itself furnish the most satisfactory proof of fraud so conclusive as to outweigh the answer of the defendant and even the testimony of witnesses.

8. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Proof of Fraud—Knowledge of Grantee.*—It is sufficient to prove that the grantee had knowledge of facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and that such inquiry would have necessarily led to a discovery of the facts from which the law imputes fraud to the grantor.

9. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Proof of Fraud—Burden of Proof—Knowledge of Grantee—Case at Bar.*—In the instant case, a suit to set aside a conveyance as fraudulent, the grantor and grantee were brothers, and were living in the same house at the time of the conveyance in question. No consideration passed at the time of the conveyance nor was a consideration agreed upon at that time. But afterwards the grantee testified that the consideration agreed upon was certain advances or loans made by the grantee to the grantor and board and lodging for the grantor and his family furnished by the grantee. After the conveyance all contracts, repairs and arrangements with tenants in connection with the property were conducted by the grantor or subject to his approval.

*Held:* That under the circumstances, the burden of proving good faith and consideration rested upon the parties to the conveyance.

10. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Badges of Fraud.*—Certain circumstances are often referred to as *indicia* of fraud, because they are usually found in cases where fraud exists. Even a single one of them may be sufficient to stamp the transaction as fraudulent. When several are found in the same transaction, strong and clear evidence will be required of the upholder of the transaction to repel the conclusion of fraudulent intent.

11. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Proof of Fraud—Relationship—Shifting of the Burden of Proof.*—Where the transaction assailed is between persons whose relationship by blood or marriage is so

intimate as fairly to create the presumption of their susceptibility to influence prompting favoritism by the one towards the other, and the proof introduced or circumstances surrounding the dealings of the parties tend to show that such was the course pursued, the burden of establishing freedom from fraud as against creditors shifts to him who is charged therewith.

12. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Shifting of Burden of Proof—Sustaining Burden—Case at Bar.*—In the instant case, a suit to set aside a conveyance as fraudulent, where, from the relationship of the parties and the circumstances of the case, the burden had shifted to the parties to the conveyance to show the genuineness of the transaction, the testimony of the grantee which was confused, contradictory and wanting in frankness, is not sufficient to sustain the burden, especially where the grantor failed to testify.

13. EVIDENCE—*Witnesses—Failure of Witness to Testify as to Facts within His Knowledge.*—When one possesses knowledge vital to his own case and fails to declare it, his silence speaks louder than the voice from the house top.

Appeal from a decree of the Hustings Court of the city of Portsmouth. Decree for complainants. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Harry A. Brinkley, J. L. Broudy,* for the appellant.

*Vincent L. Parker, Crocker & Crocker,* for the appellees.

MCLEMORE, J., delivered the opinion of the court.

The cause is before us upon an appeal from a final decree entered therein on the 21st day of December, 1923, wherein the appellees here were the complainants, but the parties will be hereafter referred to as they were designated in the court below.

The Norman Packing Company, Inc., filed its bill in chancery at the March rules, 1922, against the defendants, S. Lipman and H. Lipman, alleging among other

things that S. Lipman was indebted to it in the sum of $421.16 with interest from December 19, 1921, and that being so indebted he with his wife, Frances, executed a deed on February 1, 1922, whereby he attempted to convey to H. Lipman, his brother, in consideration of $10.00 and other good and valuable considerations, two certain parcels of land; one on Brambleton avenue in the city of Norfolk, thirty feet by 107 feet; one on Hill avenue in the city of Portsmouth with fifty feet front (two lots) on Hill avenue, and running back between parallel lines sixty-five feet. That said deed "was not upon consideration deemed valuable in law, and was made with intent to delay, hinder and defraud your complainant of the debt which was then due it, of all of which the said H. Lipman had notice."

The usual prayer for relief followed, and the answer of the defendants was "that they deny the allegations of the said bill."

On April 6, 1922, City Realty Corporation filed its petition, setting up an obligation due to it by S. Lipman of about $3,000.00, and praying that it be allowed to (file its petition and) join the said Norman Packing Company, Inc., as parties complainants.

On October 27, 1923, the defendants filed their joint and several amended answers to this petition and to the bill of complaint in which they say: "That they deny each and every allegation of said bill and petition."

Depositions were duly taken, and the cause coming on to be heard upon the merits resulted in a decree being entered on the 27th day of October, 1923, setting aside the deed of February 1, 1922, and directing certain accounts to be taken of the real estate of defendants and of the debts due to complainants. A report

was made in due course, and on December 21, 1923, an order was entered confirming the report, fixing the amount due the complainants and directing a sale of the real estate unless the debts and costs were paid within sixty days from its entry.

To correct these orders an appeal was prayed and allowed, and the cause is before us for final determination.

This brings us to a consideration of the evidence with the view of ascertaining first, whether the deed of February 1, 1922, was made without consideration deemed valuable in law, and with intent to hinder, delay and defraud the complainant and petitioner; and second, was that fraudulent design on the part of the grantor known to and participated in by the grantee.

[1] We have no difficulty in reaching the conclusion that S. Lipman conveyed the property to his brother, H. Lipman, for the purpose of defeating complainant in its effort to collect the account admittedly due it.

F. W. Beasley in his testimony, which stands uncontradicted, says: "I then stated to Mr. Lipman, Mr. Lipman unless you pay the Norman Packing Company, Inc., immediately I am going to proceed to attach the real estate which I personally know you own, etc." To this statement S. Lipman replied: "You can't do that; I expected you would attempt to do it, and I have transferred that property to keep you from doing it."

At the time of this conversation S. Lipman owned a piece of property known as the High street lot in Portsmouth, upon which there was a mortgage for $6,500.00 held by City Realty Corporation, and was well known to be more than the property would sell for. Lipman was therefore anxious to be relieved of the contingent liability resulting from his signature

as maker of the bond evidencing the debt, and approached F. W. Beasley, who was interested in the Norman Packing Company, Inc., and in the City Realty Corporation as well, with the proposition: "Unless you have this original sale cancelled, and release me of the mortgage notes which I now owe on that property, I will never pay the Norman Packing Company, Inc., because the Norman Packing Company, Inc., is you." All of this occurred some fifteen or more days after the deed conveying his property to his brother.

We pass to the second question in the case, because that involves and determines the course this cause must ultimately take. Was there fraudulent design on the part of the grantor known to and participated in by the grantee in the conveyance of February 1, 1922?

The grantor and grantee were brothers, and had been living in the same house from December 20, 1921, to March 1, 1922; Sam and his family having come to his brother's on December 20th because his combination store and residence was destroyed by fire on that date.

There is no great difficulty in determining in a general way what the law is as applied to this class of cases, but the facts surrounding each case are subject to shadows and colorings as variable as human emotions and impulses, the result being that adjudicated cases rarely prove to be decisive of the case in judgment, and the court must, in the light of the general principles of the law, and of its knowledge of human nature, read the evidence with these fundamentals in mind and interpret it in that manner that best comports with common sense and human experience.

A few general legal principles may be kept in mind as bearing upon the issues involved:

[2] "Fraud is not to be assumed on doubtful evidence, or circumstances of mere suspicion. It must be clearly and distinctly proved. The law never presumes fraud, but the presumption is always in favor of innocence and honesty." *New York Life Ins. Co.* v. *Davis*, 96 Va. 739, 32 S. E. 475, 44 L. R. A. 305.

[3] "(4) A fraudulent intent concurred in by both grantor and grantee always vitiates a conveyance, as indeed the statute declares affirmatively by pronouncing its nullity, and negatively by providing that it shall not be void if founded on a valuable consideration, and the grantee had no notice of the fraudulent intent." 2 Minor on Real Property, section 1173.

[4] "(5, 6) Relationship is not a badge of fraud, and there is no law which forbids persons standing in near relationship of consanguinity, affinity, or business, from dealing with each other, or which requires them to conduct their business with each other differently from the manner in which they deal with other persons, though when fraud is charged their dealings with each other will be closely scrutinized, as they may strengthen a presumption arising from other circumstances." *Johnson* v. *Lucas*, 103 Va. 36, 48 S. E. 497.

"The relationship of the parties (father and son) and the insolvency of the grantor, do not of themselves constitute badges of fraud and relieve the creditors from proving the charges of fraud set up in their pleadings." *Johnson* v. *Lucas*, 103 Va. 36, 48 S. E. 497.

[5] "As a general rule the burden of proof rests on him who charges fraud, and not on him whose conduct is charged to be fraudulent. But, where the transaction assailed is between brother and brother or other near relatives, only slight evidence is required to shift

the burden of showing its *bona fides*." *Mankin* v. *Davis*, 82 W. Va. 757, 97 S. E. 296; *Carlsbad Mfg. Co.* v. *Kelley*, 84 W. Va. 190, 100 S. E. 65; *Hickman* v. *Trout*, 83 Va. 478, 3 S. E. 131; *Todd* v. *Sykes*, 97 Va. 143, 33 S. E. 517.

In *Crowder* v. *Crowder*, 125 Va. 80, 99 S. E. 746, Judge Burks, speaking for the court, says:

[6] "While fraud must be clearly proved by him who alleges it, it is not necessary that it should be expressly shown. It is rare that it can be. The participants are not apt to discuss it, but actions speak louder than words; and the transaction itself often furnishes proof of the fraud that is entirely satisfactory. *Hazelwood* v. *Forrer*, 94 Va. 703, 27 S. E. 507; *Todd* v. *Sykes*, 97 Va. 143, 33 S. E. 517."

[7] "A transaction may of itself and by itself furnish the most satisfactory proof of fraud so conclusive as to outweigh the answers of the defendants and even the testimony of witnesses." *Parr* v. *Saunders*, 1 Va. Dec. 731, 11 S. E. 979; *Hazelwood* v. *Forrer*, 94 Va. 706, 27 S. E. 507.

As was said by that distinguished jurist, Judge Riely, in *Furguson* v. *Daughtrey*, 94 Va. 308, 26 S. E. 822:

[8] "It was not necessary, in order to avoid the conveyance, to prove that she had positive knowledge of the fraudulent intent of the grantor. Express proof of notice is rarely attainable. The doer of an illegal act is not wont to proclaim his unlawful purpose. As the illegal intent may be a just and legal implication from the evidence, so may notice of the illegal intent be a just and legal imputation from knowledge possessed by the grantee. It is sufficient to prove that the grantee had knowledge of facts and circumstances which were naturally and justly calculated to excite

suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and that such inquiry would have necessarily led to a discovery of the facts from which the law imputes fraud to the grantor.''

The evidence as presented in the record justifies, we think, the following conclusions:

[9] Grantor and grantee were brothers and were living in the same house from December 20, 1921, to March 1, 1922; that while thus associated, S. Lipman conveyed the property now attempted to be applied to the payment of his debts to his brother, H. Lipman; that aside from the assumption of certain liens on the property conveyed to the grantee, there was no consideration passing at the time of the conveyance (February 1, 1922), the entire consideration of $3,350.00 was made up of items claimed to have been paid to the grantor from May 25, 1921, to March 1, 1922. Of these items—eight in number—there are three in which the checks have been produced. One March 8, 1921, one September 17, 1921, and one March 1, 1922, aggregating $1,350.00. Two of these it will be observed were made months before the conveyance, and one thirty days thereafter; that the proof as to the five remaining items is supplied solely by the testimony of the grantee, H. Lipman; that at the time of the conveyance, grantor and grantee had given but little, if any, thought to the consideration for which the property was to be sold, and did not reach any definite understanding till about thirty days thereafter; "when I made the bargain to buy the house, then we figured up that I would charge him. Q. When you decided to buy his house you thought of all these moneys you advanced and keeping

him in the house? A. Yes, sir. Q. And you figured that and put it in the property? A. Yes, sir. Q. Is that the way you did it? A. Yes, sir." No evidence of indebtedness was taken at the time these sundry advances or loans were claimed to have been made, nor was there any promise of payment of any of the items with the exception of the $300.00 charged for board and lodging of Sam and his family while they remained with his brother in the home.

That after the conveyance of February 1, 1922, all contracts, repairs and arrangements with tenants in connection with the property conveyed were either conducted by Sam Lipman, or Harry Lipman's engagements in relation thereto were subject to the approval of Sam—the grantor; that Sam agreed to sell the property to a third party as late as May 6, 1922, and accepted a note for a part of the purchase money payable to himself, which note was afterwards changed and made payable to his brother; that as previously stated, the price at which the transfer was to be made was not agreed upon till March 1, 1922, whereas the deed was recorded on or about February 1, 1922.

Harry Lipman's testimony on this subject is as follows:

"Q. When did you and your brother agree as to the price you were to pay for this property?

"A. The first payment?

"Q. When did you and your brother agree as to the price you were to pay?

"A. When I gave him the last money.

"Q. You agreed when you paid him the last $1,-400.00?

"A. Yes, sir.

"Q. That was after the deed was made to you, wasn't it?

"A. (No answer.)

"Q. You don't know, do you?

"A. Do you mean when I agreed?

"Q. I asked you when was it you and your brother agreed what you should pay for these two pieces of property and you said when you gave him the $1,-400.00?

"A. No; I made the last settlement when I gave him the $1400.00.

"Q. Now, I will come back to the other question. When did you and your brother agree what you should pay for this property?

"A. At the time he made the transfer.

"Q. At the time you made the deed; when was that?

"A. It is on the deed.

"Q. Do you remember when it was?

"A. The first of February, I think.

"Q. Did you know, at that time, what you would have to pay for the property?

"A. At that time?

"Q. Yes.

"A. No, sir.

"Q. Did you know when you made any of these payments how much you would have to pay for the property?

"A. Except when I made the last payment—except in payments I made to him after February 1st.

"Q. The payments you made after February 1st you knew what you would have to pay for it?

"A. Yes, sir.

"Q. You already had a deed for it then, didn't you?

"A. February 1st?

"Q. Yes.

"A. Yes, sir."

"It may be that no one of these circumstances would have been sufficient to place the appellants upon the defensive, but we think where so many suspicious circumstances are linked together as in this case, the burden of proving good faith and consideration rests upon those who are parties to the conveyance.

[10] "Certain circumstances are often referred to as *indicia* of fraud, because they are usually found in cases where fraud exists. Even a single one of them may be sufficient to stamp the transaction as fraudulent. When several are found in the same transaction, strong and clear evidence will be required of the upholder of the transaction to repel the conclusion of fraudulent intent." *Hickman* v. *Trout*, 83 Va. 401, 3 S. E. 136.

"Surely, these facts make so strong a *prima facie* case of fraud as to put on the grantee, not only in behalf of common fairness, but in self-vindication, the burden of repelling the conclusion to which they irresistibly lead, that of fraudulent design by the grantor, fully known to and participated in by the grantee. Such, we say, is the irresistible inference from the facts established, and to repel such inference there was need of the most indisputable proof of the good faith of the transaction, and of the *bona fide* existence of the debts in satisfaction of which the conveyance was, for over two-thirds of the alleged consideration, claimed to have been executed." *Hickman* v. *Trout*, 83 Va. 492, 3 S. E. 137; *Todd* v. *Sykes*, 97 Va. 143, 33 S. E. 517.

In the case of *Elliott & Co.* v. *Johnson*, 85 W. Va. 706, 102 S. E. 681, Judge Lynch, speaking for the court, ably discusses the principles and doctrines applicable to this and kindred cases, that being a conveyance between brothers:

[11] "Therefore where, as here, the transaction assailed is between persons whose relationship by blood or marriage is so intimate as fairly to create the presumption of their susceptibility to influence prompting favoritism by the one towards the other, and the proof introduced or circumstances surrounding the dealings of the parties tend to show that such was the course pursued, the burden of establishing freedom from fraud as against creditors shifts to him who is charged therewith. *Carlsbad Mfg. Co.* v. *Kelley, supra.* In such cases the law imposes upon the latter the duty to show with reasonable certainty the genuineness of the transaction, and requires a court of equity to scrutinize it with the utmost diligence to ascertain whether it is in fact fraudulent, and, if so, to cancel and annul it at the suit of a plaintiff whose rights are affected injuriously thereby. *North American Coal & Coke Co.* v. *O'Neal,* 82 W. Va. 186, 195, 95 S. E. 822. As said in point 5 of the syllabus in *Colston* v. *Miller,* 55 W. Va. 490, 47 S. E. 268:

"'Relationship between the parties, by blood or affinity, calls upon the court for careful and close scrutiny of the transaction and the conduct of, and evidence offered by, the grantee.'"

[12, 13] To carry the burden which the circumstances in this case have placed upon the defendants, they rely solely upon the unsupported evidence of H. Lipman, the grantee in the conveyance, and this is confused, contradictory and wanting in frankness. With respect to all of the questions at issue Sam Lipman must of necessity be familiar, yet from him there comes no word. When one possesses knowledge vital to his own case and fails to declare it, his silence speaks louder than the voice from the house top.

To ask a court to believe that the transactions

involved in this case, and the circumstances leading up to the transfer of the property, were not matters of free discussion and of joint counsel between the brothers, living under the same roof and eating at the same table, is to put a strain upon human credulity too great to be carried.

If the testimony in this case can support a conveyance, then verily can a grantee in every transaction attacked by creditors as fraudulent and void, by his own evidence, make secure his title to property placed in his keeping by a dishonest debtor, and by him received in furtherance of the common purpose.

We think there was between these brothers a conspiracy to defeat the collection of complainants and petitioners debts, and that the conveyance of February 1, 1922, was conceived and executed in an effort to make effective their designs. This a court of equity will not permit, and the decree of the lower court being in harmony with the views herein expressed will be affirmed.

*Affirmed.*