# Staunton.

## DAVENPORT v. KENDRICK, ET AL.

### September 22, 1927.

1. USURY—*Bills, Notes and Checks—Note Tainted with Usury not Void.*— Under section 5552 of the Code of 1919 a note tainted with usury is not void, but only founded on "an illegal consideration as to the excess beyond the principal sum loaned or forborne."

2. USURY—*Bills, Notes and Checks—Defense not Available Against Bona Fide Holder of Negotiable Paper.*—The defense of usury is not available against a *bona fide* holder for value of negotiable paper who acquired the paper before maturity in due course of trade. The only effect of the plea is to cast upon the claimant the burden of showing that he is such holder. When he has shown this, he is entitled to recover.

3. USURY—*Whether Holder of Note was a Bona Fide Holder without Notice— Case at Bar.*—The instant case was a suit brought by complainant to enjoin a sale which had been advertised under a deed of trust, and to have two notes, one of them secured by the deed of trust, purged of alleged usury. The question at issue was whether the holder of the notes was a holder in due course. The holder of the notes was a brother of the original creditor, another brother of such creditor was a trustee in one deed of trust and a third brother was a cotrustee in the second deed of trust. There was evidence that the original creditor's reputation for truth and veracity and for honesty and fair dealing was bad, but there was no evidence that his brothers were not truthful and honest, or that the holder of the notes was not able to make the advances which he claimed to have made to his brother as consideration for the notes, or that the other brothers had any interest in the subject matter of the suit. A statement of account between the holder of the note and his brother was made a part of the record. This statement could not have been manufactured with fraudulent intent, and showed the indebtedness of the original creditor to his brother, the holder of the note, how it arose and the items composing it, and that the notes in question were transferred to the holder to discharge his brother's indebtedness to him. It appeared from the testimony of the holder and his brother that the holder knew nothing as to the transaction between

the debtor and his brother, nor what was the consideration of the notes. The complainant testified that the notes were usurious.

*Held:* That the holder of the notes was a holder in due course, and the defense of usury was not available against him.

4. WITNESSES—*Impeachment of Witnesses—Case Tried by the Court without the Intervention of a Jury—Weight of Witness' Evidence for the Court.*— Where the reputation of a witness for veracity has been impeached, in a case tried by the court without the intervention of a jury, it is for the court to say, upon a consideration of all the circumstances of the case, what, if any, weight it will give to the testimony of the witness and the conclusion of the trial court will receive great consideration on appeal, and will not be reversed except for manifest error.

5. USURY—*Suit to Have a Note Purged of Usury—Evidence—Statement of Account Between Original Creditor amd Holder of Note—Case at Bar.*— The instant case was a suit to purge two notes of complainant of alleged usury. The original creditor transferred the notes to his brother. A statement of accounts between the two brothers was admitted in evidence to show that the original creditor was indebted to his brother and that the notes in question were transferred to this brother in settlement of the account.

*Held:* That the statement was in the nature of an original entry, and though not binding on complainant, was admissible as tending to show the state of accounts between the brothers, and that one brother sold the notes to the other for value.

6. USURY—*Whether Holder of Note was Bona Fide Holder without Notice— Alleged Transferor of Note Using it as Security after the Alleged Transfer—Case at Bar.*—The instant case was a suit to purge two notes of complainant of usury. Complainant insisted that as to one of the notes at least the holder, who was a brother of the original creditor, had not borne the burden that was upon him to show he was a holder in due course. A clerk of a chancery court in another State testified that after the alleged transfer the original creditor in a suit in his court put up the note in question to secure a surety on a forthcoming bond which he had to give. This witness was asked whether the "note bore any endorsements outside of the body of the note," and answered "No." The witness might have understood that the inquiry was whether there were any endorsements on the note of any persons not mentioned in the body of the note. There was no necessity for the name of the holder to be on the note. The witness testified three years after the transaction as to his observations of the note and his memory might have been at fault, especially as he could not recollect for three months the existence of a paper of which he had given a certified copy. The use of the note as collateral was fully explained in the testimony of the holder and his

brother, the original creditor, and the original creditor was positive in his testimony that the note was endorsed and delivered to his brother. The holder could not recollect when it was endorsed, but it turned up in his hands with the endorsement on it. The original creditor intended to make the note the property of his brother, and, in the absence of evidence to the contrary, the inference is that he did whatever was necessary at the time of settlement with his brother to make him the legal owner of the note—that is, endorse it.

Held: That the deposit of the note as collateral security by the original creditor under the circumstances did not impeach the *bona fides* of the transfer.

7. FRAUD AND DECEIT—*Relationship of the Parties—Brothers—Badges of Fraud.*—The mere relationship of parties, as brothers, is not a badge of fraud and they are not required to transact business with each other in any different manner from what they would do with third persons, but their transactions will be scrutinized, and their relationship considered in conjunction with other evidence in the case in determining from the evidence as a whole whether the transaction under investigation is consistent with honesty, or is a fraud upon the rights of others.

8. APPEAL AND ERROR—*Parties—Suggestion of Death—Case at Bar.*—In a suit against the holder of notes to purge the notes of usury, it was assigned as error that the trial court failed to decide the question of usury between complainant and the original creditor. The point did not appear to have been raised in the trial court, and even if it had been raised and decided adversely to appellant, the Supreme Court of Appeals was without jurisdiction to pass upon it, because the original creditor was not before the court. While mentioned as a party defendant to the appeal, no process had been served on him. It was said in the brief of appellee that he was dead, but no suggestion of his death had been made upon the record. If dead and appellant had desired to prosecute his suit further, it should have been revived in the trial court against his personal representative. Litigation can only be conducted between living parties.

Appeal from a decree of the Circuit Court of Washington county. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Warren & Widener*, for the appellant.

*H. G. Lavinder* and *White, Penn & Stuart*, for the appellees.

BURKS, J., delivered the opinion of the court.

[1, 2] It may be assumed for the purposes of this case that the two negotiable notes in controversy are tainted with usury, but, under section 5552 of the Code, this does not render them void, but only founded on "an illegal consideration as to the excess beyond the principal sum loaned or forborne." The defense of usury, however, is not available againse a *bona fide* holder for value of negotiable paper who acquired the paper before maturity in due course of trade. The only effect of the plea is to cast upon the claimant the burden of showing that he is such holder. When he has shown this, he is entitled to recover. *Lynchburg Nat'l Bank* v. *Scott*, 91 Va. 652, 22 S. E. 487, 29 L. R. A. 827, 50 Am. St. Rep. 860.

The trial court held that the appellee had sustained this burden, and dismissed complainant's bill. From that decree this appeal was allowed.

On January 13, 1922, the appellant, R. H. Davenport, and his wife executed a negotiable note to W. J. Kendrick for $6,000.00 payable one year after date. This note was given by Davenport and his wife for a loan of $6,000.00 to Davenport, and was secured by a deed of trust on two tracts of land owned by Davenport. He claimed that he only received $5,000.00 of the amount and that the remaining $1,000.00 was retained by Kendrick for interest. He, however, signed and delivered to Kendrick a receipt for the $1,000.00 in cash. Kendrick claims that he deducted $360.00 for a year's interest and paid Davenport the residue of the $1,000.00 in currency at his request, and took a

receipt for $1,000.00   There is no dispute as to the
$5,000.00 which was paid by checks, some of them to
creditors of Davenport to relieve the property of liens.

When the note fell due, Davenport was unable to
pay it, and applied to Kendrick for an additional loan.
After some negotiations and a short delay, Kendrick
agreed to make him an additional loan of $3,550.00.
For this loan Davenport and his wife executed and de-
livered to Kendrick their negotiable note, dated March
21, 1923, payable one year after date, and secured the
same by a second deed of trust on the same lands.
Davenport claims that of this loan he only received
$1,500.00, and that Kendrick retained the remaining
$2,035.00 as interest for one year on the two loans.
Kendrick claims that the $2,035.00 was paid in cash
at the request of Davenport, and that he only deducted
interest at six per cent on the two notes for one year,
paid the residue in currency to Davenport and took
his receipt for the $2,035.00.

This suit was brought by Davenport to enjoin a
sale which had been advertised under the first deed of
trust and to have the two notes purged of the alleged
usury.

As to the amount of cash paid on each loan, Daven-
port and Kendrick are in direct conflict.   This conflict
the trial court did not pass on, nor are we called upon
to decide it.

[3] The question we are called upon to decide is, was
the appellee, E. M. Kendrick, a holder in due course?
Such a holder is thus defined in section 5614 of the
Code:

"A holder in due course is a holder who has taken
the instrument under the following conditions:

"1. That it is complete and regular upon its face.

"2. That he became the holder of it before it was

overdue and without notice that it had been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

This section is qualified by section 5611 of the Code (section 49, Neg. Instr. Act).

An inspection of the notes shows a compliance with the first condition, and nothing is alleged to the contrary.

The other conditions are so intimately connected with each other as to necessitate their discussion together.    Before entering upon the discussion, however, it should be stated that five witnesses for the complainant testified that the reputation of W. J. Kendrick for truth and veracity and for honesty and fair dealing was bad.    No evidence to the contrary was offered except the testimony of W. J. Kendrick that each of said witnesses was hostile to him, giving his reasons for so thinking.    While it appears that E. S. Kendrick, E. M. Kendrick and V. Kendrick are brothers of W. J. Kendrick, there is no evidence that either of them is not truthful and honest, or that E. S. Kendrick, or V. Kendrick, has any interest in the subject matter of this suit, or that E. M. Kendrick was not abundantly able to make the advances which he claims to have made to W. J. Kendrick.    In other words, the evidence as to the persons mentioned is limited to the fact that they are brothers of W. J. Kendrick, that E. S. Kendrick is a trustee in the first deed of trust; that V. Kendrick is cotrustee with H. G. Peters in the second deed of trust; and that E. M. Kendrick is the holder of the two negotiable notes in controversy.

[4] Where the reputation of a witness for veracity

has been impeached, in a case tried by the court without the intervention of a jury, it is for the court to say upon a consideration of all the circumstances of the case, what, if any, weight it will give to his testimony, and the conclusion of the trial court will receive great consideration by this court, and will not be reversed except for manifest error.

Prior to 1918, W. J. Kendrick and E. M. Kendrick resided at Meadow View, Washington county, Virginia, and on October 3, 1918, they had a settlement, and W. J. fell in debt to E. M. in the sum of $2,260.00, and gave him the following certificate:

"($2,260.00)

"This is to certify that W. J. Kendrick and E. M. Kendrick has made settlement to date; balance due E. M. Kendrick, two thousand two hundred and sixty dollars ($2,260.00). Which we agree to pay on demand.

"This October 3, 1918.

"W. J. KENDRICK,
"SUSIE G. KENDRICK."

This certificate bears the following endorsement: "November 20, 1918. Credit with machinery sale and stock, $350.25," and written across the face of it are the words: "Paid in full March 3, 1922. E. M. Kendrick."

This settlement was made over three years before the first loan to Davenport, and the correctness of the certificate and its endorsement is not called in question. W. J. removed to Bristol to reside in 1917. In December, 1920, E. M. Kendrick gave his check to W. J. Kendrick for $2,970.54; on June 6, 1921, a check for $600.00, and June 27, 1921, a check for $400.00. The original checks are filed with the record, and the

cancellation stamps of the banks on which they are drawn show that each of them was paid a few days after it was drawn. It will be observed that all of these checks were given and paid long before the first loan to Davenport was made and could not have been a part of a scheme concocted to defraud him. Subsequently, on March 3, 1922, these two brothers had another settlement, and the original statement made at the time is filed in the record, composed of the items above mentioned, with interest calculated to March 3, 1922, shows that on that date W. J. was indebted to his brother, E. M. Kendrick, in the sum of $6,605.47. On this sum is credited the note of R. H. Davenport for $6,000.00, leaving a balance due E. M. of $605.47 as of March 3, 1922. The Davenport loan of $6,000.00, which was made for one year, had then been running less than two months, and the evidence above recited leaves no room to doubt the *bona fides* of the indebtedness above shown. The above balance of $605.47 was carried forward to the date of the next settlement, which was on July 2, 1923, when E. M. Kendrick became the purchaser of the second Davenport note for $3,535.00. At that time, W. J. Kendrick was indebted to E. M. Kendrick in the sum of $1,535.99, and in order to "square the settlement" and acquire the Davenport note, it became necessary for E. M. Kendrick to pay to W. J. Kendrick the difference between the amount of the Davenport note and the balance due by W. J. Kendrick to E. M. Kendrick, and this he did by giving his check to W. J. Kendrick for $2,000.00, which was duly paid. There was then added to the above balance of $605.47, the interest on the two Davenport notes, amounting to $844.62, the above mentioned check for $2,000.00 from E. M. Kendrick to W. J. Kendrick, dated July 2, 1923, and interest on

the check amounting to $85.00, making a total indebtedness of W. J. Kendrick to E. M. Kendrick on July 2, 1923, of $3,535.09, which is credited by the Davenport note to W. J. Kendrick for $3,535.00, dated March 21, 1923, and payable "twelve months after date, without interest." The original check for $2,000.00 was filed with the record, and it is admitted that it was paid by the bank on which it was drawn a few days after its date. This settlement was made more than eight months before the note for $3,535.00 fell due. No question is made about the endorsement of this note, and it is clear that it was for value.

When the settlement of March 3, 1922, was made E. M. Kendrick retained a copy. When the settlement of July 2, 1923, was made, the former settlement was copied and there was added to it the items above mentioned, since accruing, showing how the balance was arrived at.* This statement of the account between the two brothers was retained by E. M. Kendrick, and in its original form is made a part of the record in the instant case, and is as follows:

"Memorandum of settlement by W. J. Kendrick, and E. M. Kendrick, March the 3, 1922.

| | | |
|---|---|---|
| "Statement dated October 3, 1918, shows a balance due E. M. Kendrick.................................. | | $2,260.00 |
| "Signed by W. J. Kendrick and Susie G. Kendrick, with a credit dated November, 1918, for.......... | $ 350.25 | |
| "Leaving balance due E. M. K. with interest to March 3, 1922............................................ | | 2,373.08 |
| "E. M. K. check to W. J. K. December 7, 1920, with interest to date.................................. | | 3,187.39 |
| "E. M. K. checks to W. J. K. dated June 6 and 27, 1921, interest to date............................ | | 1,045.00 |
| "Total due E. M. K. March 3, 1922.............. | | $6,605.47 |

* Counsel for the appellant file with their brief a statement showing some difference in the interest calculations, but this is immaterial as the statement referred to furnishes the basis of the settlement, and it is plain that E. M. Kendrick paid value for the notes of Davenport.

"R. H. Davenport, note to E. M. K. dated January 13, 1922 ........................................... $6,000.00

"Leaving balance due E. M. K. March the 3, 1922.    $  605.47
"July the 2nd, 1923, paid to E. M. K. interest on the
    Davenport notes to March 22, 1924 ................    844.62
"E. M. K. check to W. J. K. dated July 2, 1923 .......    2,000.00
"Interest on the $2,000.00 check to March 22, 1924 ....      85.00

"Total due E. M. K. to date .....................    $3,535.09
"R. H. Davenport, note to E. M. K. dated March 22,
    1923 ........................................... $3,535.00
"This July 2nd, 1923."

[5] This statement is in the nature of an original entry, and though not binding on Davenport, is admissible in evidence as tending to show the state of accounts between these two brothers, and that W. J. Kendrick sold to E. M. Kendrick, for value, the Davenport note for $6,000.00 on March 3, 1922, and the note for $3,535.00 on July 2, 1923.

[6] The appellant insists that E. M. Kendrick is not a holder in due course of the note for $6,000.00, or at least that he has not borne the burden that was upon him to show that he was such, and relies upon the testimony of M. L. Hodge, clerk of the Chancery Court of Bristol, Tennessee.

There was a suit pending in said chancery court of *Miller* v. *W. J. Kendrick*, in which it became necessary for W. J. Kendrick to give a forthcoming bond with security, in the penalty of $8,000.00, in order to replevy certain property. He got Judge Burrough to go on this bond as surety, and Hodge testified that W. J. Kendrick put up the $6,000.00 note of Davenport "to secure Judge Burrough to help protect him against responsibility as bondsman, and it was just attached to this bond." He further testified as follows:

"Q. State whether that note bore any endorsements outside of the body of the note? A. No, sir, it did

not. Q. Was the name of E. M. Kendrick on that note in any way? A. No, sir. Q. Do you remember the date when that note was deposited? A. No, sir, I do not." He was further asked if a paid check for $1,900.00 was in the papers in that case and answered, "I can't say," and yet he gave a certified copy of that check, which is filed in this record, dated March 20, 1925, and his deposition in this case was taken June 12, 1925.

There was no necessity for the name of E. M. Kendrick to be on the note, and it is singular that the witness was not asked the direct question if the name of W. J. Kendrick was on it, but was asked if the "note bore any endorsements outside of the body of the note." It is by no means clear what is meant by the question. The witness might well have understood that the inquiry was whether there were any endorsements on the note of any persons not mentioned in the body of the note, and have truthfully answered "No, sir," when in fact the name of W. J. Kendrick was on it. Color is given to this construction by the next question asked the witness: "Was the name of E. M. Kendrick on that note in any way?" It appears from the record that the note was deposited with the Tennessee court in April, 1922, and Hodge testified three years afterwards as to his observations of the note. It does not appear that he made any particular examination of it. He could not recollect for three months the existence of a paper of which he had given a certified copy, and we cannot be too sure of the accuracy of his memory as to the endorsements on the note after the lapse of three years. Furthermore, it is said in the brief of counsel for the appellee that "the endorsement was dim and could have readily escaped Mr. Hodge's casual notice or recollection." Of this we cannot speak, as the original is not before us, but, if so, and if it is material,

it illustrates the advantage the trial court had over this court in arriving at its conclusion.

The use of the $6,000.00 note as collateral in the Tennessee court is fully explained in the testimony of W. J. Kendrick and E. M. Kendrick. The note was in the safety box of E. M. Kendrick in the bank at Meadow View, and W. J. Kendrick went there and told E. M. of his need for security in Tennessee and asked for the use of the $6,000.00 note as collateral, and E. M. consented thereto and delivered the note to W. J. Kendrick for that purpose. Afterwards, E. M. Kendrick went on the delivery bond in lieu of Judge Burrough, whereby Burrough was relieved of liability, and the $6,000.00 note was surrendered. There was nothing unreasonable in this, and the transaction does not prove fraud. The "statement" hereinbefore mentioned could not have been manufactured for the fraudulent purpose attributed to it. It showed the indebtedness from W. J. Kendrick to E. M. Kendrick, how it arose and the items composing it. They are established by indisputable evidence and there could have been no inducement to falsify them to the prejudice of Davenport. The statement also shows that the Davenport notes were transferred by W. J. Kendrick to discharge that indebtedness. It thus appears that they were transferred for value and before maturity.

It appears from the testimony of E. M. Kendrick and W. J. Kendrick that E. M. knew nothing of the transactions between W. J. Kendrick and Davenport, nor what was the consideration of the notes, and Davenport himself testifies that he never heard of E. M. Kendrick in the transaction until just before the instant suit was brought. It also appears that E. M. Kendrick gave notice to the trustee to make the sale

which was enjoined, and at that time exhibited the notes in controversy.

W. J. Kendrick is positive in his statement that the note was endorsed and delivered to E. M. Kendrick when the settlement was made on March 3, 1922. E. M. Kendrick could not recollect when it was endorsed, but it turned up in his hands with the endorsement on it. It was in his safety box at Meadow View before it was pledged, and the "statement" aforesaid shows that it became his property on March 3, 1922. There is nothing in the record to justify the imputation of fraud or dishonesty on the part of E. M. Kendrick. He seems to have testified with fairness and a proper regard for the truth. It is true that he was a brother of W. J. Kendrick, whose reputation for veracity was impugned, but that was not a badge of fraud. That he paid full value for the two notes and that he acquired them before maturity seems to be indisputable from the evidence, and the fair inference from the "statement" aforesaid is that they were severally endorsed at the dates of the respective settlements. In fact, no question is made as to the endorsement of the note for $3,535.00. He intended to make the notes the property of E. M. Kendrick, and, in the absence of evidence to the contrary, the inference or presumption is that, at the time of the settlement, he did whatever was necessary to make E. M. Kendrick the complete legal owner of them—that is, endorsed them.

The origin of the indebtedness to E. M. Kendrick, the settlement had with him, the manner in which it was discharged, the endorsements of the notes, and the time of the endorsements, are all matters testified to by W. J. Kendrick and in which he is corroborated by the "statement" aforesaid, together with the cancelled checks aforesaid, and in part by the testimony of E. M. Kendrick.

[7] The record does not justify the imputation of untruthfulness, or fraud, or unfair dealing, on the part of E. M. Kendrick, nor that he had any knowledge of usury in the transaction. The imputations arise out of the fact that he is brother of W. J. Kendrick. Had the transfer of the Davenport notes been to a third person, the imputations would probably never have been made. The mere relationship of parties, as brothers, is not a badge of fraud and they are not required to transact business with each other in any different manner from what they would do with third persons, but their transactions will be scrutinized, and their relationship considered in conjunction with other evidence in the case in determining from the evidence as a whole whether the transaction under investigation is consistent with honesty, or is a fraud upon the rights of others. *Johnson* v. *Lucas*, 103 Va. 36, 48 S. E. 497; *Hutcheson* v. *Savings Bank*, 129 Va. 281, 105 S. E. 677; *Lipman* v. *Norman Packing Co.*, 146 Va. 461, 131 S. E. 797; *Neff* v. *Edwards*, *post* page 616, 139 S. E. 291 (decided at the present term), and cases cited.

Notwithstanding the reputation of W. J. Kendrick, the facts stated are not overcome by the vague and uncertain testimony of. Hodge. The trial court was of opinion that E. M. Kendrick brought himself within the definition of a "holder in due course," and we are not prepared to say that its conclusion was erroneous. There are some circumstances in connection with the transaction that may look a little suspicious as to W. J. Kendrick, and these suspicions are apt to be magnified merely on account of the relationship of the parties, but they are at least mere suspicions upon which the property rights of parties cannot be allowed to rest.

[8] It is assigned as error that the trial court failed to decide the question of usury between W. J. Kendrick

and Davenport, and, if found, to decree against W. J. Kendrick accordingly.   This point does not appear to have been raised in the trial court—certainly it was not directly passed upon—but even if it had been raised and decided adversely to the appellant, we are without jurisdiction to pass upon it, because W. J. Kendrick is not before this court.   While mentioned as a party defendant to the appeal, no process has been served on him.   It is said in the brief of the appellee that W. J. Kendrick is dead, but no suggestion of his death has been made upon the record.   If dead and appellant had desired to prosecute his suit further, it should have been revived in the trial court against his personal representative.   Litigation can only be conducted between living parties.   *Booth* v. *Dotson*, 93 Va. 233, 24 S. E. 935; *Jackson* v. *Wickham*, 112 Va. 128, 70 S. E. 539.

The decree of the trial court will be affirmed; but, in view of the suggestion above mentioned, the case will be remanded to the trial court with direction to permit the complainant, the appellant here, if he shall be so advised, to take such proceedings as he is entitled to, if any, to revive the suit against the personal representative of W. J. Kendrick, if he is dead.   The appellee is entitled to recover his costs in this court.

*Affirmed.*