## Wytheville.

### HAZLEWOOD & OTHERS *v.* FORRER.

#### June 24, 1897.

1. FRAUDULENT CONVEYANCES—*Suits to avoid—Proof required—Case at bar.*—
   In order to set aside a deed on the ground of fraud, the fraud must not
   only be charged, but clearly proved, and guilty knowledge or participa-
   tion of the grantee must be shown. But the transaction itself may fur-
   nish proof of the fraud so satisfactory and conclusive as to outweigh the
   answers of the defendants denying the fraud, or even the evidence of
   witnesses. In the case at bar the fraud of the grantor and participation
   of the grantee are fully established.

2. JUDICIAL SALES—*Inadequacy of price.*—Where a judicial sale has been
   sufficiently advertised, well attended, and fairly conducted, it should
   not be set aside for inadequacy of price merely because the bill, which
   was filed three years before the sale, charged that the property was
   worth a much larger sum than it brought at the judicial sale.

Appeal from decrees of the Corporation Court of the city
of Roanoke, pronounced October 26, 1894, and January 29,
1895, in a suit in chancery wherein the appellee was the com-
plainant, and the appellants were the defendants.

*Affirmed.*

The deed assailed in this suit was executed and delivered in
November, 1891, and the suit to set it aside was instituted
May 12, 1893. The complainant's debt was contracted prior
to the execution of this deed, and he had recovered judgment
thereon in November, 1892. The bill charges that the deed
was not only voluntary, but that the grantor owed a large
amount of debts besides that of the complainant, and that the
deed was made with intent to hinder, delay, and defraud the
creditors of the grantor, and that the grantee had knowledge

of such intent.   The other facts sufficiently appear in the opinion of the court.

*Berkley & Bryan*, for the appellants.

*Smith & King*, for the appellee.

CARDWELL, J., delivered the opinion of the court.

This is an appeal from two decrees of the Corporation Court of Roanoke city, setting aside as voluntary, fraudulent, and void, a deed conveying grantor's real estate to a trustee for the benefit of her son, and confirming sales of the property made under the decree of the court.   The deed was executed by Lucy C. Hazlewood November 18, 1891, conveying to E. D. Frazier all of her real estate, which consisted of two lots with improvements thereon, situated in the city of Roanoke, in trust for grantor's son, James Edward Kidd, with power to the trustee at any time by the request of James Edward Kidd to sell the property or any part thereof, provided the proceeds of any such sale be reinvested in other property of equal value with the property sold, but in no event is the property purchased by the proceeds of all or any of the property sold to be incumbered by deed of trust, mortgage, or other lien, and it is expressly provided that nothing in the deed is to be construed as a requirement compelling any vendee of the trustee and *cestui que trust* to see to the application of the proceeds of any sale made by them.

The consideration for this conveyance is set out as follows: " * * * Natural love and affection which the said Lucy C. Hazlewood has for her son, James Edward Kidd, and the further consideration of the payment as they became due by the said James Edward Kidd, of certain sums of money owed by the said Lucy C. Hazlewood, viz.: One thousand dollars borrowed money which is secured by a deed of trust on that certain lot of land situated in the city of Roanoke, Va., and

on Railroad avenue, and other sums amounting to about eight hundred and eighty dollars, principal and interest, and se-cured by deed of trust on that certain lot or parcel of land situated on Wheat street, Belmont addition to the city of Roanoke, Va., and another sum of two hundred and fifty dollars, evidenced by several negotiable notes, and the further consideration that the said James Edward Kidd provide a suit-able and comfortable home for the said Lucy C. Hazlewood, during the remainder of her life, to pay all doctors bills, and the hire of competent nurses to attend and wait upon her in sickness and old age, and to furnish her with suitable cloth-ing."

The defendants, Lucy C. Hazlewood and James Edward Kidd, appellants here, answered the bill filed by appellee, James E. Forrer, a creditor of Mrs. Hazlewood, who obtained his judgment against her a few days after the deed in ques-tion was executed and recorded, upon notes matured prior to the deed, the former filing her answer after this cause had been pending for some time before a commissioner engaged in stating the accounts and making the enquiries directed by a decree of the court upon the bill taken for confessed, and the latter not until the October term of the court, 1894, at which term the report of the commissioner was confirmed; and while both deny the allegations of the bill that the deed was made to hinder, delay, and defraud the creditors of the grantor, neither of them attempts a satisfactory explanation of the suspicious circumstances surrounding the execution of the deed, nor the damaging testimony adduced by the com-plainant to show fraud in the transaction. When examined as a witness on behalf of the defence, Mrs. Hazlewood was asked: "What was the consideration passed between her son and herself for the conveyance of November 18, 1891?" And her answer was: "Well, I conveyed it because he was to pay up all liens upon the property, and to give me my support out of it in my life time, and care for me. I give my other

son a great deal more than I could give him, and I wanted to give him something.'' In his answer, which is the only explanation that he attempts to make of this suspicious transaction, James Edward Kidd says, in substance, that finding that his brother, Peter Kidd, was getting everything from their mother, and that in a short time there would be nothing left. for respondent or her unless he (respondent) asserted his rights, and that he then complained to his mother and told her of his fears; that it was then that she informed him that Peter had gotten all the ready money she had, and that she was owing the last two payments on the Greenwood (Wheat street) property which she was unable to pay, but that if he (respondent) would assume to pay this debt and pay to Mr. Jamison the money she borrowed for respondent to open business, and to pay his license, and agree to take care of her, she would convey the property to him; that he accepted the proposition, and the property was conveyed to Frazier in trust for respondent's benefit; and that he at once set about to discharge the debts as fast as he could do so, applying all the money he got for the stock. he had on hand when his license to keep a bar-room had expired, and had paid out on the property and for the support of his mother nearly three thousand dollars, as admitted by his mother. This statement varies widely from that made by his mother on the witness stand, but when read in connection with her statement clearly shows that both regarded the conveyance of November 18, 1891, as a gift to the son, and further shows that he knew at the time that she was financially embarrassed, and that he had no means whatever with which to pay the debts on the property.

Nothing is better settled than that fraud must be proved when charged, but, as was said by Staples, J., in *Parr* v. *Saunders*, 14 L. J. 437: ''A transaction may of itself and by itself, furnish the most satisfactory proof of fraud, so conclusive as to outweigh the answer of defendants or even the evi-

dence of witnesses. The circumstances attending and follow-
ing a transaction are often of. such character as to leave not
even a shadow of a doubt as to the real object and motive of
the parties engaged in it, and where this is the case *   *   *
it is rash to attempt to claim any advantage from an an-
swer because it is responsive to the bill. Experience attests
that in a majority of cases fraud can only be established by
circumstances. The motives and intentions of the parties can
only be judged of by their actions, and the nature and char-
acter of the transaction in which they are engaged. They
often furnish more conclusive evidence than the most direct
testimony." See also *Jones* v. *McGruder*, 87 Va. 360.

It would be difficult to conceive of a case more directly
within the scope and purview of this sound reasoning of Judge
Staples, than the one under consideration.

At the time the deed in question was executed, the grantor
was without means to pay the debts on her property, and this
much, at least, her son, James Edward Kidd, admits that he
knew. Besides the liens on her property she owed debts
amounting to seven or eight thousand dollars, and suits for
large amounts were then pending against her in the courts of
Roanoke city; in fact, she was wholly insolvent. Her son,
about twenty-two years of age, was living in the house with
her, had never engaged in any business, and, according to
her own statement, he had no means with which to pay the
liens upon the property conveyed to him. The statement
that is asked to be credited is that the mother borrowed $1,100
to start her son in business, and furnished him several other
small sums which she borrowed; that he obtained a license to
conduct a bar-room and saloon business on the premises situ-
ated on Railroad avenue in June, 1892, and ran the business
until the last of April, 1893, when his license expired; and
that during this period of eight or nine months he paid back,
out of the proceeds of the business, of the money she had bor-

rowed for him and debts of hers about $3,320, besides providing her with a support worth $25 per month.

On the other hand the proof is that the taxes on the property for 1891, 1892, and 1893 were not paid, and that of the money borrowed to start the son in business only $50 was paid back, and that paid by the mother. A totally disinterested witness, residing on the lot adjoining the premises upon which Mrs. Hazlewood and her son lived and this bar-room and saloon business was conducted, testifies that the son, James Edward Kidd, was incapable of conducting any business successfully; that he drank a great deal, and did not seem to be in his right mind when in liquor, and did not seem to have much sense when not in liquor; that Mrs. Hazlewood, being a strong and sensible woman, was more capable of conducting a business than her son; that witness saw them together often at the door of their place of business, and that they had no other help employed during the eight or nine months the business was run. This witness is uncontradicted, and his statement is corroborated by the fact that Mrs. Hazlewood, as shown by her deed, was unwilling to entrust her son with the absolute control of her property which she was seeking to keep out of the reach of her pursuing creditors.

With charges of fraud made against him in the bill filed in this cause, present when the evidence was being taken before the commissioner, James Edward Kidd remains silent, contenting himself with a vague and unsatisfactory answer filed almost at the very last moment in which he could have filed it, and does no more in his answer than to attempt to corroborate the statements of his mother. Under the circumstances, it was incumbent upon him to explain this remarkable transaction between him and his mother, and to show how it was possible for him to accomplish the results testified to by her; and the inference is irresistible that the needed explanations would have been made by him had the transaction been straightforward and devoid of fraud. That this transaction

was but a scheme on the part of the parties engaged in it to take the property of an insolvent debtor out of the reach o pursuing creditors, is as conclusively shown as such a fact, under similar circumstances and surroundings, is susceptible of proof.

It is urged upon us, however, that although the deed of November 18, 1891, be set aside as to creditors, James Edward Kidd should be reimbursed to the amount paid out pursuant to the provisions of the deed, and the cases of *Henderson* v. *Hunter*, 26 Gratt. 926, and *Parr* v. *Saunders*, *supra*, are cited in support of this view. Besides the fact that both these cases recognize the established doctrine that where there is actual fraud, both parties participating, the deed is utterly void *ab initio*, and is not permitted to stand as security for any purpose, a complete answer to the contention is, that the proof wholly fails to show that James Edward Kidd paid any money pursuant to the provisions of the deed. It is shown that the only money paid on the debt secured on one piece of the property was paid by Mrs. Hazlewood herself, and it does not appear even from her own statement whether what was paid on the debt secured on the other piece of property was paid before or after the deed of November 18, 1891, was executed.

It is also urged that it was error in the court below to confirm by its decree of January 29, 1895, the sales of the two pieces of property conveyed in the deed, because of the inadequacy of the prices obtained therefor; and the only facts relied on to support this assignment of error are, that the bill in this cause alleged that the property was worth $10,000 in 1891, while it only sold in December, 1894, the one piece for about $1,350, and the other for $800. If it be a fact, which is immaterial, that the property was worth $10,000 in 1891, it but makes the fraud of the parties to the transaction we have been considering all the more transparent. But the appellants have no good cause to complain of the confirmation of

the sales of the property. The sales were well advertised, well attended and fairly conducted. It is shown that the commissioners of sale made every possible effort to get more for the property, but were unable to do so. Moreover, two weeks time was given appellants to obtain better bids for the property, and they reported none, if they made the effort.

We are of opinion that the decrees complained of should be affirmed.

*Affirmed.*