# Staunton.

JOHNSON AND OTHERS v. LUCAS AND OTHERS.

September 15, 1904.

1. FRAUD—*Preference by an Insolvent Debtor.*—In the absence of statute, State or Federal, forbidding it, an insolvent debtor may, without the imputation of fraud, prefer one creditor to another, although the preferred creditor may know that the preference will have the effect of defeating the collection of other debts. This is not hindering or delaying creditors within the meaning of the statute against fraudulent conveyances, as they have no right to a priority.

2. FRAUD—*Confession of Judgment by Insolvent Debtor—Speedy Enforcement of Judgment.*—The fact that an insolvent debtor confesses judgment in favor of his father-in-law, who immediately institutes a suit in chancery to enforce his judgment, and causes his debtor's land to be sold for the judgment, and purchases the land at less than the amount of the judgment is of little or no value in making out a case of fraud against the parties.

3. FRAUD—*Failure to List Bond for Taxation.*—The failure of a creditor to list for taxation a bond of his debtor is a circumstance tending to show that the bond was not then in existence, but its force is greatly weakened by the fact that many tax-payers, either through ignorance or design, fail to list their choses in action for taxation.

4. FRAUD—*Relationship as a Badge—Scrutiny of Transactions.*—Relationship is not a badge of fraud, and there is no law which forbids persons standing in near relationship of consanguinity, affinity, or business, from dealing with each other, or which requires them to conduct their business with each other differently from the manner in which they deal with other persons, though, when fraud is charged, their dealings with each other will be closely scrutinized, as they may strengthen a presumption arising from other circumstances.

5. FRAUDULENT CONVEYANCE—*Bill to Avoid—Proof—Suspicions.*—Until the facts and circumstances relied on and proved to establish fraud

make out a case from which fraud will at least be presumed, the defendant to a bill to set aside a transaction as fradulent is not required to explain such facts and circumstances, although they are not altogether free from suspicion.

Appeal from a decree of the Circuit Court of the city of Radford rendered in a suit in chancery wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Moore & Harless* and *Crosier & Clark,* for the appellants.

*Jno. R. Johnson* and *Longley & Jordan,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The object of this suit, which was brought by the appellants, was to set aside a judgment confessed by Lucas, one of the appellees, in favor of Thomas, the other appellee, and to annul the proceedings in a chancery suit instituted by Thomas to subject the lands of Lucas to the satisfaction of that judgment, (which resulted in the sale and conveyance of said lands to Thomas by a commissioner of the court), upon the ground that the confession of judgment and all proceedings had to enforce its collection were for the purpose of hindering, delaying and defrauding the appellants in the collection of a debt due to them from Lucas, as surety on the bond of their guardian.

The most material facts and circumstances relied on and proved to establish the alleged fraud are as follows:

1. That Lucas was insolvent, and confessed judgment in favor of Thomas during the pendency of appellants' suit, of which he had notice.

These circumstances are not entitled to much weight in determining the question of fraud. They are not inconsistent with an honest intent. In the absence of a statute, State or Federal, a debtor has the right to prefer one creditor to another. Giving such a preference is not fraudulent, though the debtor be insolvent, and the creditor is aware at the time that it will have the effect of defeating the collection of other debts. This is not hindering or delaying creditors within the meaning of the statute. It does not deprive other creditors of any legal right, for they have no right to a priority. As was said by Judge Burks in *Williams, &c.* v. *Lord & Robinson*, 75 Va. 390, 402, since "a debtor has the right to pay one creditor in preference to another, so he may, without the imputation of fraud, secure one creditor to prevent another from gaining an advantage." *Lucas, Sergeant, &c.* v. *Clafflin & Co.*, 76 Va. 269, 275-279, and cases cited.

2. Thomas' instituting, immediately after the judgment was confessed, his suit in chancery to subject Lucas' lands to its payment, and prosecuting it as rapidly as possible without defense or delay on Lucas' part.

These circumstances are of little or no value in making out a case of fraud. Thomas was merely exercising his legal rights, and in the manner provided by law. Lucas had just confessed the judgment, and had no defense to it so far as the record shows. The subjection of the property to the payment of the judgment lien as quickly as possible, was in the interest, rather than to the prejudice, of the other creditors. Delay, so far as the record shows, could have benefited no one but the debtor.

3. That Lucas has remained in possession of said property with full use and control thereof during all the time since the judicial sale, and has used and occupied a part of the property as a residence for himself and family; that he has during all that time paid all taxes thereon, and the real estate has

remained upon the land books in his name until within the last few months.

There is no evidence that after the sale to Thomas the land remained on the land books in the name of Lucas. Neither does it appear that Lucas continued to reside on any part of the property, or that he exercised any acts of ownership or control over it, except the statement of two witnesses that they rented certain portions of the property from him, paying the rent to him, and taking receipts therefor, signed "B. F. Thomas, per J. A. Lucas." It is proved that Lucas paid the taxes on the property when he paid his own and his mother's taxes, but it appears that he lives in the city of Radford where the property is situated, that he collected the rents thereon and receipted for the same in Thomas' name, and that Thomas lived in Roanoke county. Taking all these facts and circumstances together, it does not clearly or satisfactorily appear that Lucas has done any act inconsistent with Thomas' ownership of the property.

4. The bill charges that in the year 1889, when the bond of Lucas to Thomas is dated, the latter had no means then or at any other time by which Lucas could have become indebted to him, and that in the year 1889 he was only assessed with $10.00 worth of personal property, and no real estate; that during the years 1888 and 1889, and prior thereto and since that time, Lucas was an engineer on the Norfolk and Western Railway, at a salary of from $150 to $175 per month, was a lender of money in the years 1888 and 1889 and the owner of a large amount of valuable property, real and personal.

This charge is not sustained by the proof. The appellants not only failed to show that at the time the bond in question was executed Thomas was a man without means, as alleged in the bill, but the evidence shows that in the year 1891 he was assessed with over 500 acres of land, valued for the purposes of taxation at more than $2,000, and that in the year 1889 he was

assessed with personal property consisting of horses, cattle, sheep, hogs, vehicles, farming implements, etc., valued for the purposes of taxation at $1,074. The appellants not only did not prove that Lucas was earning before and at the time the bond was executed a salary of from $150 to $175 per month, but it is admitted among the facts agreed that at that time, and for some years prior thereto, he was only receiving a salary of from $60 to $65 per month. So completely did the appellants fail in their proof as to this allegation that in their brief they seem to abandon the charge, and argue, as tending to show fraud, that it is unreasonable "that Thomas, supposing he was able to lend Lucas this large sum of money at one time, would lend the same to a man of uncertain means, such as his son-in-law, Lucas. Lucas was depending on his daily labor as an engineer to support his family, his father and mother, and owning only the real property Thomas subjected to the payment of his confessed judgment, and which when sold and purchased by Thomas brought but little over one-half of the alleged debt and accrued interest due Thomas, taking as the record discloses no security for the same."

5. That Thomas did not give in the bond of Lucas for taxation. The failure of a holder of a bond to list it for taxation is a circumstance tending to show that the bond was not in existence at that time, but its force is greatly weakened by the well known but lamentable fact that a large number, if not a majority, of taxpayers, either through ignorance or design, omit listing for taxation their choses in action, notwithstanding their duty to do so, and the penalties imposed by statute for such' omission. See *Spence* v. *Repass*, 94 Va. 716, 720, 27 S. E. 583.

6. The relationship of the parties.

Relationship is not a badge of fraud. There is no law which forbids persons standing in near relations of consanguinity, affinity, or business, from dealing with each other, or which

requires them to conduct their business with each other differently from the manner in which they conduct it with other persons. But as fraud is generally accompanied by a secret trust, the debtor usually selects some person in whom he can repose secret confidence. And as this trust and confidence is more likely to exist between relatives, or those who occupy confidential relations, their transactions with each other, when fraud is charged, will be more closely scrutinized.

"Any relation," says Bump on Fraudulent Conveyances, sec. 67, "which gives rise to confidence, though not a badge of fraud, strengthens the presumption that may arise from other circumstances and serves to elucidate, explain or give color to the transaction." *Wait on Fraudulent Conveyances*, sec. 243; *Gottleib* v. *Thatcher*, 151 U. S. 271, 279, 14 Sup. Ct. 319, 38 L. Ed. 157.

Conceding for the purposes of this case, that the relationship of father-in-law and son-in-law, which existed between Thomas and Lucas, was as close as that between father and son, as is argued, still we do not think that the facts and circumstances relied on and proved (those discussed in detail and the others of minor importance, and which do not require special notice) make out a case from which fraud could be presumed. Until that was done the appellees were not required to explain such facts and circumstances although not altogether free from suspicion, nor was Thomas required to prove that the bond from Lucas to him was based upon a valuable consideration. *Bump on Fraudulent Conveyances*, sec. 66.

We are of opinion that the Circuit Court did not err in holding that the appellants had failed to establish the fraud charged, and that its decree should be affirmed.

*Affirmed.*