# Richmond.

## JOSIE R. HAYNES AND OTHERS V. MARTHA J. BUNTING.

March 21, 1929.

The opinion states the case.

*Walter L. Hopkins*, for the appellants.

*Christian & Lamb*, for the appellee.

CAMPBELL, J., delivered the opinion of the court.

This is an appeal from a decree setting aside a deed from Josie R. Haynes to her son, W. R. Haynes, as voluntary and fraudulent. The facts may be summarized as follows:

Josie R. Haynes purchased a house and lot in the city of Richmond in the year 1918, and placed thereon a deed of trust securing the sum of $3,765.00. On February 12, 1925, Josie R. Haynes entered into a contract with Martha J. Bunting for the lease of a piece of property situated at Ocean View, Virginia, known as the "Georgia Cottage," for the purpose of

conducting a hotel or boarding house. The lease was for a two year period, beginning March 1, 1925, at an annual rental of $1,500.00.

On August 6, 1926, Josie R. Haynes and her husband, J. T. Haynes, executed a deed conveying the Richmond city property to their son, W. R. Haynes. The consideration stated in the deed is the sum of ten dollars and the assumption of a deed of trust upon the property in favor of Pollard and Bagby, Incorporated, Trustee, for the sum of $3,765.00. It is contended, however, by the appellants that the actual consideration was the sum of $6,000.00, and that under an agreement between the mother and son the latter was to have credit for certain sums of money due him by the mother, and a further credit for a large sum of money paid by the son upon the indebtedness of his mother.

Default having been made in the payment of the rent due Martha J. Bunting, she brought suit to obtain judgment for the balance due upon the rental notes and to have the deed from Josie R. and J. T. Haynes set aside as having been made with the intent to hinder, delay and defraud their creditors and to subject the land to the payment of the debt asserted.

The law governing cases of this nature is well settled.

In *Lipman* v. *Norman Packing Co.*, 146 Va. 466, 131 S. E. 798, McLemore, J., said:

"A few general legal principles may be kept in mind as bearing upon the issues involved:

" 'Fraud is not to be assumed on doubtful evidence, or circumstances of mere suspicion. It must be clearly and distinctly proved. The law never presumes fraud, but the presumption is always in favor of

innocence and honesty.' *New York Life Ins. Co.* v. *Davis*, 96 Va. 739, 32 S. E. 475, 44 L. R. A. 305.

"'(4) A fraudulent intent concurred in by both grantor and grantee always vitiates a conveyance, as indeed the statute declares affirmatively by pronouncing its nullity, and negatively by providing that it shall not be void if founded on a valuable consideration, and the grantee had no notice of the fraudulent intent.' 2 Minor on Real Property, section 1173.

" 'Relationship is not a badge of fraud, and there is no law which forbids persons standing in near relationship of consanguinity, affinity, or business, from dealing with each other, or which requires them to conduct their business with each other differently from the manner in which they deal with other persons, though when fraud is charged their dealings with each other will be closely scrutinized, as they may strengthen a presumption arising from other circumstances.' *Johnson* v. *Lucas*, 103 Va. 36, 48 S. E. 497.

" 'The relationship of the parties (father and son) and the insolvency of the grantor, do not of themselves constitute badges of fraud and relieve the creditors from proving the charges of fraud set up in their pleadings.' *Johnson* v. *Lucas*, 103 Va. 36, 48 S. E. 497.

" 'As a general rule the burden of proof rests on him who charges fraud, and not on him whose conduct is charged to be fraudulent. But, where the transaction assailed is between brother and brother or other near relatives, only slight evidence is required to shift the burden of showing its *bona fides*.' *Mankin* v. *Davis*, 82 W. Va. 757, 97 S. E. 296; *Carlsbad Mfg. Co.* v. *Kelley*, 84 W. Va. 190, 100 S. E. 65; *Hickman* v. *Trout*, 83 Va. 478, 3 S. E. 131; *Todd* v. *Sykes*, 97 Va. 143, 33 S. E. 517.

"In *Crowder* v. *Crowder*, 125 Va. 80, 99 S. E. 746, Judge Burks, speaking for the court, says:

■ " 'While fraud must be clearly proved by him who alleges it, it is not necessary that it should be expressly shown. It is rare that it can be. The participants are not apt to discuss it, but actions speak louder than words, and the transaction itself often furnishes proof of the fraud that is entirely satisfactory. *Hazlewood* v. *Forrer*, 94 Va. 703, 27 S. E. 507; *Todd* v. *Sykes*, 97 Va. 143, 33 S. E. 517.'

" 'A transaction may of itself and by itself furnish the most satisfactory proof of fraud so conclusive as to outweigh the answers of the defendants and even the testimony of witnesses.' *Parr* v. *Saunders*, 1 Va. Dec. 731, 11 S. E. 979; *Hazlewood* v. *Forrer*, 94 Va. 706, 27 S. E. 507.

"As was said by that distinguished jurist, Judge Riely, in *Furguson* v. *Daughtrey*, 94 Va. 308, 26 S. E. 822:

■■ " 'It was not necessary, in order to avoid the conveyance, to prove that she had positive knowledge of the fraudulent intent of the grantor. Express proof of notice is rarely attainable. The doer of an illegal act is not wont to proclaim his unlawful purpose. As the illegal intent may be a just and legal implication from the evidence, so may notice of the illegal intent be a just and legal imputation from knowledge possessed by the grantee. It is sufficient to prove that the grantee had knowledge of facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and that such inquiry would have necessarily led to a

discovery of the facts from which the law imputes fraud to the grantor.' "

The trial court held the proof sufficient to set aside the deed on the ground that it was voluntary, except as to the sum of $400.00 paid by the grantee to the grantor on June 2, 1926. The action of the court in impressing the land with a lien of $400.00 in favor of W. R. Haynes is assigned as cross-error by the appellee. The correctness of the decree complained of must be determined by the proof.

In *Neff* v. *Edwards*, 148 Va. 628, 139 S. E. 295, Judge Burks said: "There are many cases in this jurisdiction on the subject of fraudulent conveyances, some upholding and others setting aside the conveyance, but precedent in such cases is of but little aid as there is such a variance of the facts, and each case must be determined upon its own facts and circumstances."

While it is true that the relationship of mother and son does not of itself constitute fraud, yet a transaction between parties so closely bound together, where the rights of third parties are involved, calls for the closest investigation. The deed from the mother to the son conveyed the entire estate of the mother. The mother was absolutely insolvent. A part of the alleged consideration is an $800.00 payment made by the son on an automobile, which the proof shows belonged to the father and was registered in his name. Another part of the alleged consideration was a debt assumed by the son which was barred by the statute of limitations.

The evidence of W. R. Haynes upon the question of the purchase of the Richmond property is so significant that we feel warranted in quoting it.

"Q. How much did your mother pay for this property when she bought it in 1918?

"A. I don't know.

"Q. Did you ever ask her?

"A. I did.

"Q. What did she tell you?

"A. I don't remember.

"Q. Where did you get your idea of $6,000.00 as a proper purchase price?

"A. I inquired around from various people and picked up the price, just my general idea of what it was worth and I thought at that time it was worth $6,-000.00.

"Q. Please give the names of the people you made that inquiry of.

"A. I don't remember anyone particular in person—no one particular person.

"Q. Mr. Haynes, that was just about a year ago at a time when you bought a $6,000.00 piece of property and you assumed a mortgage of nearly $4,000.00 on it and you said you think you asked your mother what it was worth, but don't remember what she said, but think you made various inquiries as to the value of it. Now see if you can remember just one person whom you asked what the value of that property was.

"A. Well, my agent asked Pollard & Bagby—Mr. Pollard or Mr. Bagby, one of the two—what he thought it was worth at that time.

"Q. Who was your agent?

"A. My father. My father asked for me and it was a loan—I figured out the worth of it from the loan on it. I knew that the loan was $3,800.00 or $3,700.00 and it was obliged to be worth anywhere from $5,-000.00 to $6,000.00 and I bought it at $6,000.00 which I considered it was worth.

"Q. Your expression a few minutes ago was that you made various inquiries around.

"A. I did.

"Q. As to the value of the property and all you have stated so far was that your agent, whom you afterwards stated to be your father, had asked Pollard & Bagby. Did you make any other inquiry of any kind?

"A. I inquired—I wouldn't say any specific person. I have asked numbers of persons and have asked three people to-day who I don't know the names of. I was around at the house to-day and looked in the window and a man came by on the street and I asked him what he thought it was worth, but I didn't take any record of that. If I go to buy any property or anything else I make up my mind as to that; doesn't anyone influence me as to that. I have a general idea of the value of real estate as I have a general idea of the value of other things and I make up my mind according to that. I can't give the name of any specific person that said it was worth $6,000.00. I might have given too much, but I gave $6,000.00. I gave or assumed $6,000.00 for the property and that is all I can say."

It also appears from the record that W. R. Haynes filed as an exhibit "a partial statement of cash paid and debts assumed in payment to or for Mrs. J. T. Haynes * * * on account of the purchase of house No. 2103 Rose Avenue, Richmond, Virginia."

Though W. R. Haynes testified that the consideration was $6,000.00, and though the exhibit was filed for the purpose of showing the various items which entered into the sum total of $6,000.00, an addition of the amounts appearing upon the list totals the sum of $6,796.50. Why the grantee, who was seeking to secure a past indebtedness by taking a conveyance of property, would overpay his debtor the sum of $796.50

is a problem in finance we are unable to solve. This transaction of itself is, we think, decisive of the question involved, without setting forth other *indicia* of fraud relied upon.

In *Hickman* v. *Trout*, 83 Va. 491, 3 S. E. 131, it is said: "Certain circumstances are often referred to as *indicia* of fraud, because they are usually found in cases where fraud exists. Even a single one of them may be sufficient to stamp the transaction as fraudulent. When several are found in the same transaction, strong and clear evidence will be required of the upholder of the transaction to repel the conclusion of fraudulent intent."

As to the cross-assignment of error, we must accord to the decision of the trial court the full weight it is entitled to. *White* v. *Reid*, 146 Va. 254, 135 S. E. 809. The statement of the grantee that he paid the sum of $400.00 in cash on June 2, is not controverted by the evidence of appellee. The trial court accepted the statement as true. The burden is upon the appellee to point out to this court the error complained of. This burden the appellee has failed to carry. We are unable to say the action of the trial court is erroneous.

We are of opinion that there is no error in the decree appealed from, and it is therefore affirmed.

*Affirmed.*