# Wytheville

MAUDE M. FOWLKES AND W. T. FOWLKES V. G. H. TUCKER, RECEIVER, ETC.

June 13, 1935.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Chinn and Eggleston, JJ.

The opinion states the case.

*George E. Allen,* for the appellants.

*W. E. Nelson* and *Blackwell, Ozlin & Whitehead,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

This is a suit brought by lien creditors of J. W. Fowlkes to set aside as fraudulent two deeds of trust executed by him to secure debts claimed to be due by him to his wife, Maude M. Fowlkes, and his brother, W. T. Fowlkes, respectively. From a decree setting aside both deeds this appeal has been taken.

On December 21, 1931, J. W. Fowlkes and Maude M. Fowlkes, his wife, conveyed to W. T. Fowlkes, trustee, certain land and personal property in Lunenburg county in trust to secure an alleged debt of $3,125.30 with interest, due to the wife, Maude M. Fowlkes, and evidenced by two certain promissory notes made by J. W. Fowlkes, payable to the order of Maude M. Fowlkes.

On the same date J. W. Fowlkes and Maude M. Fowlkes, his wife, conveyed to A. B. Arvin, trustee, certain land and personal property in Lunenburg county in trust to secure an alleged indebtedness of $5,198.30 with interest, due by the said J. W. Fowlkes to his brother, W. T. Fowlkes, and evidenced by several notes.

On the same date, but subject to the aforesaid deeds, J. W. Fowlkes and Maude M. Fowlkes, his wife, executed a general deed of assignment to Peyton G. Jefferson and John M. Fowlkes, trustees, conveying all of his real estate, consisting of approximately 2,500 acres of land, numerous town lots, and considerable personal property, for the benefit of his creditors.

The first two deeds of trust were recorded on December 21, 1931, while the deed of assignment was recorded the following day.

At the time these deeds were executed and recorded, J. W. Fowlkes had become financially involved and his creditors were proceeding against him. Judgments had been obtained against him on October 23, 1931, November 4, 1931, November 5, 1931, and December 7, 1931. Shortly after these deeds were recorded further claims were reduced to judgment on December 23, 1931, and January 26, 1932.

In October, 1933, G. H. Tucker, as receiver of the First National Bank of Victoria, First National Bank of Chase City, and Victoria Supply Company, Incorporated, suing for the benefit of himself and all other lien creditors of J. W. Fowlkes, filed a bill in chancery against J. W. Fowlkes, Maude M. Fowlkes, W. T. Fowlkes, the trustees in the several deeds, and others, for the purpose of setting aside the two deeds of trust and the deed of assignment. The bill attacked the deeds of trust in favor of Maude M. Fowlkes and W. T. Fowlkes, respectively, on the ground that neither was executed upon a consideration deemed valuable in law, and that both were made for the purpose of hindering, delaying and defrauding the creditors of the said J. W. Fowlkes.

The deed of assignment was likewise attacked, on grounds not necessary to be mentioned, however, as the validity of that instrument is not here involved.

J. W. Fowlkes, Maude M. Fowlkes, W. T. Fowlkes, trustee, and W. T. Fowlkes filed their separate answers wherein it was asserted that the said conveyances for the benefit of Maude M. Fowlkes and W. T. Fowlkes, respectively, were both executed upon valuable considerations, in good faith, and for the purpose of securing the payment of actual loans made by the wife and brother, respectively, to the debtor, J. W. Fowlkes.

There was a reference to a commissioner in chancery who was required, among other things, to report whether or not the two deeds of trust were executed with intent to hinder, delay and defraud the creditors of J. W. Fowlkes, and whether or not they should be set aside as fraudulent.

The commissioner in chancery reported that the deed

securing the debt alleged to be due to Maude M. Fowlkes, the wife of the debtor, was executed without consideration and with intent to hinder, delay and defraud the creditors of J. W. Fowlkes, and recommended that it be set aside.

As to the deed of trust securing the alleged indebtedness due W. T. Fowlkes, the brother of the debtor, the commissioner found that this was based on a valuable consideration, was not executed by J. W. Fowlkes with intent to hinder, delay and defraud his creditors, and hence was a valid and subsisting lien.

Upon appropriate exceptions filed by the respective parties, the circuit court upheld the findings of the commissioner with reference to the deed securing Maude M. Fowlkes, the wife, but overturned the commissioner's report as to the deed securing W. T. Fowlkes, the brother of the debtor, and entered a decree setting aside both deeds as being without consideration, and having been executed by J. W. Fowlkes for the purpose of hindering, delaying and defrauding his creditors.

Well settled rules for testing the *bona fides* of similar transactions between husband and wife have been frequently laid down by this court.

In *Brunswick Bank & Trust Co.* v. *Valentine,* 158 Va. 512, 519, 164 S. E. 569, 571, Chief Justice Campbell, quoting from *Robinson* v. *Bass' Adm'r,* 100 Va. 190, 193, 40 S. E. 660, said: " 'They [the rules] are, that transactions between husband and wife must be closely scrutinized, to see that they are fair and honest and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors; that in a contest between the creditors of a husband and wife, the burden of proof is upon her to show by clear and satisfactory evidence the *bona fides* of the transaction, and in all such cases the presumption is in favor of the creditors, and not in favor of the title of the wife. And the opinion further says: "Nor is the holding of a bond sufficient evidence that at the time the bond purports to have been given it was recognized as a debt, and that both hus-

band and wife intended to occupy the relation to each other of debtor and creditor. The burden is upon the wife to show that the original transaction represented a loan by her to the husband, and a contemporaneous promise on his part to pay the debt, otherwise, what was originally a gift to the husband in business, and used by him as a basis of credit, could subsequently, when he became involved, be converted into a debt to his wife, and thus perpetrate a fraud upon his creditors with the utmost facility and immunity." ' "

Tested by these principles we think the court was right in holding that the wife has not borne the necessary burden of proof. While both she and her husband testified that the deed was given to secure money actually loaned by the wife to the husband, no part of which had been repaid, no vouchers, checks, or evidences of payment, other than the notes themselves, were produced.

A part of the wife's claim, amounting to $1,792.80, is represented by a note dated December 23, 1929, payable twelve months after date. The husband and wife claim that $1,400 of this represents principal and $392.80 accrued interest. They say the principal was derived by Mrs. Fowlkes from the sale of certain land in Buckingham county inherited by her from her grandfather. They are uncertain just when the land was sold. The wife testified that the sale occurred five or six years after their marriage in 1896. The husband stated that it was "sometime after 1903," and later, that it must have been about December 23, 1918, when he gave his wife a written memorandum of his indebtedness to her, which, by the way, contains no promise to pay. Even assuming that the loan was made on December 23, 1918, the accrued interest on December 23, 1929, the date of the note, would have amounted to approximately $924 and not $392.80.

Furthermore, it is significant that during the intervening years from the date of the sale until the execution of the note, the wife held no written promise of payment, and, in

the meantime, the claim had been barred by the statute of limitations.

We think the evidence fails to prove that at the time of the alleged loan there was the necessary contemporaneous promise by the husband to pay the debt. *Brunswick Bank & Trust Co.* v. *Valentine,* 158 Va. 512, 519, 164 S. E. 569. Furthermore, the fact that no payments of interest were ever made by the husband to the wife, and that full interest is not even now claimed, shows that the parties did not regard this as an actual debt. *Hutcheson* v. *Savings Bank,* 129 Va. 281, 295, 105 S. E. 677.

Our conclusion, therefore, is that the wife has not borne the necessary burden with reference to this claim. See *Sledge* v. *Reed,* 112 Va. 202, 70 S. E. 523; *Eason* v. *Lyons,* 114 Va. 390, 76 S. E. 957; *Hutcheson* v. *Savings Bank,* 129 Va. 281, 105 S. E. 677; *Davis* v. *Southern Distributing Co.,* 148 Va. 779, 139 S. E. 495.

We come to the next claim of the wife, based on a note for $1,332.50 dated May 16, 1931, payable ninety days after date. While the husband and wife claimed that this represents a loan of $1,300 from the wife to the husband, plus $32.50 accrued interest thereon, when the original evidence of indebtedness was produced it turned out to be notes signed by "The A. C. Jones Co., Inc., by Jno. M. Fowlkes, Sec'y and Treas.," payable to Mrs. Fowlkes. The notes do not bear the signature of J. W. Fowlkes either as co-maker or endorser.

On cross-examination Mrs. Fowlkes admitted that this money was loaned not to her husband but to The A. C. Jones Company, Incorporated, of which her son, John M. Fowlkes, was the secretary and treasurer, and in which J. W. Fowlkes was the principal stockholder. Obviously there is no foundation for the claim that this item of $1,332.50 is a debt due by J. W. Fowlkes to his wife.

In considering whether or not the deed of trust securing W. T. Fowlkes should be set aside as fraudulent in law, there are no new legal principles involved. They were thus summarized by Judge McLemore in *Lipman* v. *Norman*

*Packing Co., Inc.,* 146 Va. 461, 467, 131 S. E. 797, 798, and approved by Chief Justice Campbell in *Haynes* v. *Bunting,* 152 Va. 395, 398, 147 S. E. 211: " 'Fraud is not to be assumed on doubtful evidence, or circumstances of mere suspicion. It must be clearly and distinctly proved. The law never presumes fraud, but the presumption is always in favor of innocence and honesty.' *New York Life Ins. Co.* v. *Davis,* 96 Va. [737] 739, 32 S. E. 475, 44 L. R. A. 305.

" 'A fraudulent intent concurred in by both grantor and grantee always vitiates a conveyance, as indeed the statute declares affirmatively by pronouncing its nullity, and negatively by providing that it shall not be void if founded on a valuable consideration, and the grantee had no notice of the fraudulent intent.' 2 Minor on Real Property, section 1173.

" 'Relationship is not a badge of fraud, and there is no law which forbids persons standing in near relationship of consanguinity, affinity, or business, from dealing with each other, or which requires them to conduct their business with each other differently from the manner in which they deal with other persons, though when fraud is charged their dealings with each other will be closely scrutinized, as they may strengthen a presumption arising from other circumstances.' *Johnson* v. *Lucas,* 103 Va. 36, 48 S. E. 497.

" 'The relationship of the parties (father and son) and the insolvency of the grantor, do not of themselves constitute badges of fraud and relieve the creditors from proving the charges of fraud set up in their pleadings.' *Johnson* v. *Lucas,* 103 Va. 36, 48 S. E. 497.

" 'As a general rule the burden of proof rests on him who charges fraud, and not on him whose conduct is charged to be fraudulent. But, where the transaction assailed is between brother and brother or other near relatives, only slight evidence is required to shift the burden of showing its *bona fides.*' *Mankin* v. *Davis,* 82 W. Va. 757, 97 S. E. 296; *Carlsbad Mfg. Co.* v. *Kelley,* 84 W. Va. 190, 100 S. E. 65; *Hickman* v. *Trout,* 83 Va. 478, 3 S. E. 131; *Todd* v. *Sykes,* 97 Va. 143, 33 S. E. 517.

"In *Crowder* v. *Crowder,* 125 Va. 80, 99 S. E. 746, Judge

Burks, speaking for the court, says: 'While fraud must be clearly proved by him who alleges it, it is not necessary that it should be expressly shown. It is rare that it can be. The participants are not apt to discuss it, but actions speak louder than words, and the transaction itself often furnishes proof of the fraud that is entirely satisfactory. *Hazelwood* v. *Forrer*, 94 Va. 703, 27 S. E. 507; *Todd* v. *Sykes*, 97 Va. 143, 33 S. E. 517.'

" 'A transaction may of itself and by itself furnish the most satisfactory proof of fraud so conclusive as to outweigh the answers of the defendants and even the testimony of witnesses.' *Parr* v. *Saunders*, 1 Va. Dec. 731, 11 S. E. 979; *Hazelwood* v. *Forrer*, 94 Va. [703] 706, 27 S. E. 507."

And as Chief Justice Campbell said in *Haynes* v. *Bunting*, 152 Va. 395, 401, 147 S. E. 211, 213: "While it is true that the relationship of mother and son does not of itself constitute fraud, yet a transaction between parties so closely bound together, where the rights of third parties are involved, calls for the closest investigation." See also, *Dodds* v. *Lafon*, 153 Va. 110, 117, 149 S. E. 417.

It is undisputed that the transaction between the debtor husband and his wife and that between the debtor and his brother are interwoven. Both of the deeds of trust bear the same date, were recorded at precisely the same hour, and were arranged at a conference after the parties were satisfied that J. W. Fowlkes was insolvent. Indeed, the greater portion of W. T. Fowlkes' claim against his brother arises out of the alleged loan to J. W. Fowlkes of certain funds derived from the sale, in 1930, of timber, which, it is claimed, was owned jointly by J. W. Fowlkes, Maude M. Fowlkes and W. T. Fowlkes. These three parties testified that this timber was sold for $9,500, of which $2,850 was due to J. W. Fowlkes, $2,850 to W. T. Fowlkes, and $3,800 due to Maude M. Fowlkes. The brother, W. T. Fowlkes, claimed that he loaned J. W. Fowlkes his full share of these proceeds, amounting to $2,850, while the wife claimed that she loaned her husband $1,300 from her share.

Strange to say none of the members of the Fowlkes family

were able to testify how the proceeds of this sale, amounting to $9,500, were paid, whether by check or in cash, to whom it was paid, and when, where, if at all, the money was deposited in bank.

There is no evidence of the payment by W. T. Fowlkes to his brother, J. W. Fowlkes, of the former's share of the proceeds of this sale, no cancelled check, no receipt or voucher. While it is alleged that this sale took place "about March, 1930, or May, 1930," and that upon its consummation W. T. Fowlkes loaned J. W. Fowlkes $2,850 out of the proceeds of this sale, the sole evidence of the debt and payment is a $3,375 note dated May 1, 1931, which, it is alleged, included not only this item of $2,850 but also two other items of $501.50 and $60, respectively, making a total of $3,411.50. Thus the note itself is not in accord with the amount which it is claimed was loaned nearly a year prior thereto. Furthermore, W. T. Fowlkes admitted that he charged his brother no interest for the use of this $2,850 from March or May, 1930, until the note was given on May 1, 1931.

As to the item of $60, the parties claimed that this was J. W. Fowlkes' share of the $200 commission for the sale of the timber, the whole of which was paid by W. T. Fowlkes. The testimony of these parties, then, is that J. W. Fowlkes borrowed the whole of the brother's, and a large part of the wife's, share of the proceeds of the sale, and left W. T. Fowlkes to pay the entire commission out of his own pocket. Strange to say, the record is silent as to whether W. T. Fowlkes ever called upon Maude M. Fowlkes, the other owner of the property, to pay any part of this commission.

Another item claimed to be due by J. W. Fowlkes to his brother is that of $501.50. It was alleged that this represented a note for $500 signed by J. W. Fowlkes, payable to W. T. Fowlkes at the Bank of Victoria, deposited for collection by W. T. Fowlkes in the First National Bank of Danville, and which was protested for non-payment by the Victoria bank, returned to the Danville bank and by it charged against W. T. Fowlkes' account. The parties were

unable to state the consideration for this note, or how, when, or why the money was paid to J. W. Fowlkes. In fact, the note itself was never produced, although there was offered in evidence a memorandum from the bank that such a note had been charged to W. T. Fowlkes' account at the First National Bank of Danville on July 7, 1929.

The testimony in regard to the other items making up the W. T. Fowlkes' alleged claim of $5,198.30 is equally unsatisfactory. No cancelled checks or vouchers were exhibited to show that J. W. Fowlkes had gotten money, or when, or where, or how. The testimony of these two brothers is that they were closely associated over a long period of years, had many financial transactions running into large amounts, and yet, strange to say, we find no books of account, cancelled checks, or evidences of any amounts paid or loaned by W. T. Fowlkes to his brother. All we have is the several present evidences of the alleged debts, coupled with the vague testimony of the brothers that the money was paid, received, and has not been returned.

Furthermore, in one breath they testify that the note dated May 1, 1931, for $3,375 (which we have heretofore discussed), was a settlement or consolidation of several old debts, and in the next they attempt to set up additional small items antedating the settlement note. Needless to say, settlements are not made between debtors and creditors in this manner.

While it is true, as we said in *Hutcheson* v. *Savings Bank*, 129 Va. 281, 289, 105 S. E. 677, 680, "Relationship is not a badge of fraud, and there is no law which forbids persons standing in near relationship of consanguinity, affinity, or business, from dealing with each other, or which requires them to conduct their business with each other differently from the manner in which they deal with other persons * * * ," yet in view of the close scrutiny to which transactions of this character between brother and brother are subject, when the rights of creditors are involved, the least which we have a right to expect is that those in near

relationship to one another will conduct their business with each other as carefully as they would with other persons. We are satisfied, from the evidence, that these brothers, evidently men of affairs, would not have dealt with other persons as they claim to have dealt with each other.

We have, then, these undisputed circumstances: the insolvency of the brother debtor; the blood relationship of the parties and their close business association extending over many years; in their dealings with each other, the total lack of business methods usually practiced by men of their experience and affairs; the absence of books of account, cancelled checks, vouchers, or other evidences of payment; the failure of one to demand and the other to pay interest on the alleged indebtedness; and finally, the involvement of this brother-between-brother transaction with a contemporaneous affair, fraudulent in law, between the same debtor husband and his wife.

We think that these circumstances, coupled with the other facts which we have related, make out a *prima facie* case, which has not been rebutted, that the transactions between W. T. Fowlkes and his brother were likewise fraudulent in law. *Dodds* v. *Lafon*, 153 Va. 110, 117, 149 S. E. 417.

For these reasons we are of opinion that the lower court was right in decreeing that these deeds of trust securing the wife and brother, respectively, were fraudulent as to the creditors of J. W. Fowlkes, and should have been set aside.

*Affirmed.*