# 𝔖taunton

John T. Flanagan v. J. M. Parsons, et al.

September 11, 1936.

Present, Campbell, C. J., and Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*Ted Dalton, Woods, Chitwood, Coxe & Rogers* and *Leonard G. Muse*, for the appellant.

*H. C. Tyler, W. J. Henson, John S. Draper* and *Showalter, Parsons, Kuyk & Coleman*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

This suit was filed by the lien creditors of J. W. Flanagan to set aside as fraudulent a conveyance by him of certain real estate to his wife, a judgment which he had confessed in her favor, and a conveyance by him of other lands to his brother, John T. Flanagan.

The lower court set aside all three of the transactions. No appeal was taken from the invalidation of the conveyance and judgment in favor of the debtor's wife. From so much of the decree as set aside the conveyance to the brother, John T. Flanagan, the latter has taken this appeal.

For many years J. W. Flanagan, F. Henry Flanagan, W. F. Flanagan, all brothers, and Frank H. Flanagan, the son of W. F. Flanagan, had operated a partnership known as Flanagan Brothers Company, which dealt extensively in buying and selling cattle in southwest Virginia.

There was another partnership known as Flanagan Brothers, composed of J. W. Flanagan and F. Henry Flanagan, which was engaged chiefly in operating the farms and properties of the partners.

John T. Flanagan, the appellant, was not a member of either firm but claims to have had considerable financial dealings with both.

In former years these partnerships had prospered, but by 1933 they had become very much involved and were unable to meet their obligations. Two of the partners, W. F. Flanagan and Frank H. Flanagan, were hopelessly insolvent. It was obvious that a large portion of the debts of both partnerships would ultimately rest on J. W. Flanagan. Suits aggre-

gating over $40,000 were then pending against the cattle partnership. A number of these, which subsequently resulted in adverse judgments in large amounts, were scheduled for trial at the October, 1933, term of the Circuit Court of Pulaski county. It was under these circumstances that the transactions here involved took place.

On October 2, 1933, there was recorded in the clerk's office of the Corporation Court of the city of Radford a deed dated May 4, 1925, by which J. W. Flanagan conveyed to his wife certain real estate in that city. On October 4, 1933, J. W. Flanagan confessed a judgment of $24,482 in favor of his wife. This judgment was docketed in the proper clerks' offices so as to become a lien on the lands of the debtor.

While this conveyance and judgment are not directly involved in this appeal, their significance will hereafter appear.

On October 2, 1933, there was recorded in the clerk's office of the Circuit Court of Pulaski county a deed whereby J. W. Flanagan, for a stated consideration of $15,931.34, conveyed to his brother, John T. Flanagan, three hundred acres of land in that county. This appeal involves the validity of that deed.

The creditors of J. W. Flanagan claim that this conveyance was without consideration and was for the purpose of hindering, delaying and defrauding them.

On the other hand the grantee, John T. Flanagan, contends that the conveyance was based on the consideration of $15,-931.34, recited in the deed, and that this is the aggregate of several debts due to him by the two partnerships, of which J. W. Flanagan was a member.

The first of these alleged debts is a note of $8,850 dated July 20, 1933, signed by Flanagan Brothers, the farming partnership, payable sixty days after date. The Flanagans claim that this is the result of a transaction which originated in 1928. They say that because of its impaired credit the cattle partnership of Flanagan Brothers Company was then unable to borrow needed funds; that John T. Flanagan borrowed from a Radford bank, on a note signed by him and endorsed by U. G. Flanagan, the sum of $10,000 which he

loaned to the cattle partnership. The note was carried at the bank in the same form and John T. Flanagan regularly paid the interest thereon. This continued until 1933, by which time the mother of Frank H. Flanagan, one of the partners, had paid to the bank a curtail of $2,500 on the debt, leaving a balance due of $7,500.

J. W. Flanagan testified that the note of $8,850 was given to John T. Flanagan because it was obvious that the latter would ultimately have to pay the balance of this debt with accrued interest.

Strange to say this large transaction is supported by no documentary evidence whatsoever. John T. Flanagan had no receipt or cancelled check showing the payment of this money by him to the partnership. No books of the partnership were produced to show that it received the money. There was forthcoming no deposit ticket or book entry from the bank with which the firm did business showing that the proceeds of this loan to John T. Flanagan had, in fact, been deposited to the credit of the partnership, although the existence of such records was vouched for by at least one of the appellant's principal witnesses.

From the time this transaction is claimed to have taken place in 1928 until the note was given on July 20, 1933, John T. Flanagan held no written evidence of this alleged indebtedness to him. In the meantime, in the absence of any written promise by the partnership to pay the debt, it had, of course, been barred by the statute of limitations.

It is further significant that no interest was ever demanded by or paid to John T. Flanagan on the alleged debt.

It also appears that when W. F. Flanagan, one of the members of the cattle partnership, went into bankruptcy he did not schedule John T. Flanagan as a creditor nor did the latter file any proof of claim of the alleged debt.

Finally, the very signature to the note fails to support the claim. It is signed by *"Flanagan Brothers,"* the farming partnership, whereas the testimony is that the loan was made to the cattle partnership of *"Flanagan Brothers Company."*

We think, therefore, that the trial court was amply justi-

fied in finding that this note of $8,850 was not given in good faith as evidence of any existing indebtedness.

It is contended that a note of $100 and another of $1,690.65 make up a part of the consideration for the conveyance. But it clearly appears from a reading of the record that these amounts were loaned by John T. Flanagan to F. H. Flanagan and not to J. W. Flanagan. They need not be further considered.

Another item is a note of $1,011 claimed to have been given by the farming partnership of Flanagan Brothers, evidencing a loan to them by John T. Flanagan for the purpose of buying cotton seed meal. The evidence as to this note is likewise vague, indefinite and unsatisfactory. No information could be given as to when or where the meal was purchased or to whom delivered. There is also a total lack of documentary evidence to support the claim.

The next item is a note for $3,000 dated August 16, 1933, signed by Flanagan Brothers, payable to J. W. Flanagan and John T. Flanagan six months after date. The appellant and his witnesses claim that this note was discounted at a Christiansburg bank and the proceeds deposited to the credit of Flanagan Brothers. But here, too, there is an entire lack of any documentary evidence to sustain the claim. It would have been a simple matter to have proven by the bank records that the proceeds of this note were used in the manner claimed.

Then, too, it is incredible that John T. Flanagan would have loaned this partnership $3,000 in August, 1933. If the testimony of the Flanagans is to be believed the two partnerships then owed this brother over $14,000 for which he held no security whatsoever. He is bound to have known that they were hopelessly insolvent.

It would serve no good purpose to review in detail the various other notes which it is claimed make up the balance of the consideration stated in the deed. Suffice it to say that the evidence with reference to each is similarly vague, uncertain and unsatisfactory. With respect to each there is a total lack of supporting documentary evidence, such as book entries, cancelled checks, receipts, etc., which one would ex-

pect in transactions of this size and character between such business men.

It is true, as claimed by the appellant, that there is no direct testimony showing the fraudulent intent of the parties to this transaction. But as this court has many times observed it is not necessary that fraud should be expressly shown. It may be proved by circumstantial evidence as was done here. And circumstances often speak louder than words.

We summarize the undisputed circumstances found here. The insolvency of the brother debtor and the pendency of litigation against him. Despite the close business association between these brothers, extending over many years, there is a total lack of business methods usually practiced by men of their experience and affairs. We do not find the usual books of account, cancelled checks, vouchers, or other proofs of the alleged transactions. There is no demand for or payment of interest on the debts, some of which are claimed to have extended over a long period.

Although it is claimed that the conveyance was in payment and satisfaction of a stated indebtedness, yet we find from the evidence that the notes claimed to have been discharged are still in the possession of the alleged creditor.

It is further to be noted that while the deed recites the consideration to be a fixed figure, $15,931.34, this is at variance with the total of the items, $17,717.80, on which the appellant relies.

We see, also, that approximately one-half of the alleged consideration for the conveyance was evidenced by a debt claimed to have been incurred in 1928, since barred by the statute of limitations, and revived by the execution of a new note shortly before the execution of the deed.

Finally, the questioned transaction between the two brothers took place simultaneously with fraudulent transactions between the debtor husband and his wife.

In *Fowlkes* v. *Tucker*, 164 Va. 507, 180 S. E. 302, we recently had occasion to review a fraudulent transaction between two brothers intermixed with another between the debtor brother and his wife. In many other respects the

facts there are similar to those here. The same principles apply to the two cases. See also, *Lipman* v. *Norman Packing Co.*, 146 Va. 461, 131 S. E. 797.

We think the decree of the lower court is plainly right and should be affirmed. It is so ordered.

*Affirmed.*