## CIRCUIT COURT OF FREDERICK COUNTY

Dollar

v.

Dollar

June 21, 1983

Case No. (Chancery) 6923

BY JUDGE ROBERT K. WOLTZ

This is a suit to set aside a conveyance of real estate and transfer of personalty on the ground they were made with fraudulent intent under § 55–80.

The marriage of the complainant and the defendant was dissolved by decree of divorce July 5, 1980. Complainant was awarded support, counsel fees and costs. Defendant has made no payments in discharge of these items. As a result the complainant obtained a judgment against the defendant November 13, 1981, for the sums then due.

Subsequent to the divorce decree and after apparent protracted negotiations, the parties by deeds to each other effected partition of their real estate formerly held as tenants by the entirety. By the complainant's deed dated November 3, 1981, the defendant received a parcel improved by a house and one improved by a garage-apartment. On November 13, 1981, the same date the judgment was rendered against him, the defendant received and recorded his deed from complainant and made and recorded a deed of gift to two minor grandchildren before recordation of the judgment. These parcels are valued at $12,000.00 and $26,000.00 respectively. Four days later, he transferred title to a pickup truck, a van and a mobile home to his son, the father of the two grandchildren, for total sale prices stated on the title certificates of $1,000.00. These transactions resulted in the defendant divesting himself of title to virtually all his property.

The defendant continued to rent out the parcel with the house on it for so long as it remained rented and continues to rent out the apartment. He has collected and used for his own purposes the rent monies. He continues to retain possession of the mobile home and live in it and keeps some of his belongings stored in the garage. He uses one of the motor vehicles and one was principally kept at the place of his residence until shortly after this suit was instituted.

The complainant became a creditor of the defendant upon rendition of the decree awarding her support and other payments. Based on that award, she later became his judgment creditor for that portion of the indebtedness now claimed which was then due. None of this is of significance here as § 55–80 in its application is not limited to any particular class of creditors but to all creditors, including subsequent ones. *Consolidated Tramway Company v. Germania Bank*, 125 Va. 331 (1917).

The principle that a transferee must have knowledge of his transferor's fraud to avoid the transaction does not mean that the transferor must have actual positive knowledge, but it is sufficient to show that the transferor was in possession of such facts "as would have excited suspicions of a man of ordinary care and prudence and put him on inquiry as to the bona fides of the transaction as would necessarily have led to the discovery of the fraud of the grantor." *Crowder v. Crowder*, 125 Va. 80 (1919). The principle would have no application to the conveyance of the real estate here as with respect to it there was no purchaser for valuable consideration; though as will be seen it has application respecting transfer of the personalty.

Proof of fraud must be clear, cogent and convincing. *Hutcheson v. Savings Bank*, 129 Va. 281 (1921); it is never presumed as presumption of "innocence and honesty" is favored. *Haynes v. Bunting*, 152 Va. 395 (1929). Where a *prima facie* case of fraud is shown by the evidence, the burden shifts to the champion of the transaction to establish the absence of fraud. *Hutcheson, supra.* That case is also authority that badges of fraud are: (1) the relationship of the parties; (2) the grantor's insolvency; (3) pursuit of the grantor by creditors; (4) want of consideration; (5) retention of possession of the transferred property by the grantor; (6) incurring debt fraudulently after the transfer.

*Haynes* says relationship is not a badge of fraud, but it does hold that when fraud is alleged, dealings of relatives *inter se* will be

closely scrutinized, and while the burden of proof of fraud is on the one charging it, a transaction between close relatives requires only slight evidence to shift the burden to the defendant to show its *bona fides*. *Haynes* is also authority for the proposition that while the relationship of parties and the insolvency of a grantor "do not of themselves constitute badges of fraud and relieve creditors from proving the charge of fraud," nevertheless it does quote *Hickman v. Trout*, 83 Va. 491 (1887), as follows:

> Certain circumstances are often referred to as *indicia* of fraud because they are usually found in cases where fraud exists. Even a single one of them may be sufficient to stamp the transaction as fraudulent. Where several are found in the same transaction, strong and clear evidence will be required of the upholder of the transaction to repel the conclusion of fraudulent intent.

Referring to the six items mentioned above in *Hutcheson*, the relationship of the parties is very close. While the grantor-transferor was not insolvent at the time of his conveyance and transfers, yet they resulted in his virtual insolvency, which is tantamount to showing insolvency at the time of conveyance. He was being pursued by a creditor, making his conveyance on the same date a judgment was rendered against him and making the transfers of personalty only four days later. There was a total lack of consideration for the real estate and questionable or at the least inadequate consideration for the transfer of personalty. There was almost complete retention of possession of the property by the grantor. The only one of the elements not shown is his incurring debt after the conveyance.

Where the complainant's evidence shows a *prima facie* case of fraud and she has shown much more than that, the burden shifts to the defendants to establish its fairness. *Hutcheson, supra*. In undertaking to bear this burden, the defendant ex-husband says that he was in poor physical condition at the time, suffering from several serious medical problems, that the date he gave his deed to the grandchildren was the same day he got his deed to effectuate partition from the complainant, and he wanted to get the matter over with all at one time and accomplish his objective as soon as possible after the partition settlement with the complainant. He further testified he was not able to read and knowing little about deeds or wills wanted to be sure the grandchildren received the realty as he understood wills could be

broken; that his son and grandchildren were very close to him, the former being the only one he can depend on to look after him as he and his daughter are estranged.

The defendant's son, who was the only other witness for the defense, said the transactions were discussed with him by the father, who wanted to dispose of the property now rather than by will and wanted it kept in the family. He stated he agreed to pay $4,500.00 for the three vehicles and has paid $500.00 cash with no receipts and with reliance on memory and mutual trust for sums paid and to be paid. He was unable to explain why consideration for the three vehicles was shown on the application for change of title as only $1,000.00 except to say perhaps it was to reduce transfer taxes.

With so many of the *indicia* of fraud present, "strong and clear evidence will be required . . . to repel the conclusion of fraudulent intent." *Hickman, supra.* The only inference favorable to the defendant is that the transactions were so patently fraudulent under the circumstances that only an extremely ingenuous and innocent person would have attempted them. There is, however, a repelling and stronger and more substantially founded inference pointing to fraud to be drawn from the fact that the ex-husband had been under Court order to pay support, counsel fees and court costs for over sixteen months when he made his conveyance and transfers. During that time he had paid not one cent nor has he since. This impels the conclusion that he would not and will not make any such payments to the complainant if by any means they can be avoided. The further conclusion is that these transactions, while incidentally to benefit his son and grandchildren, were primarily in furtherance of his fixed intention to avoid his obligation to the complainant and thereby hinder, delay and defraud her.

The son indicated by his testimony some asperity toward his mother. He admitted discussing the transactions with the father and if not expressly privy to the father's purposes, the circumstances were such they should have excited his suspicions and put him on inquiry of the *bona fides* of the transaction so as to uncover the fraudulent purpose. Consequently, the son is held knowledgeable of the fraud. When that is true, even the extent to which he may have paid consideration will not save him from enforcement of the claimant's rights.

The conveyance of the real estate and the transfer of the motor vehicle titles are found to be fraudulent and are set aside with respect

to the claim of the complainant. Appropriate decree to enforce her claim will enter.

Finally, it should be noted that the infant defendants were appropriately defended by counsel making unnecessary the appointment of a guardian *ad litem* to defend their interests. § 8.01–9(B).